Robert Charles LADD, Appellant,

v.

The STATE of Texas.

No. 72914.

Court of Criminal Appeals of Texas.

Oct. 6, 1999.

T.J. Baynham, Jr., Tyler, for appellant.

Edward J. Marty, Asst. Dist. Atty., Tyler, Matthew Paul, State's Atty., Austin, for State.

## O P I N I O N

MANSFIELD, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MEYERS, PRICE, HOLLAND, WOMACK, JOHNSON, and KEASLER, JJ., joined.

Appellant, Robert Charles Ladd, was found guilty of capital murder under Texas Penal Code § 19.03(a)(2) and sentenced to death. In 113 points of error, he argues that he is entitled to a judgment of acquittal or, at the least, a new trial. We have

re-ordered and grouped appellant's points of error to facilitate a more orderly discussion. We will affirm the judgment of the trial court.

*Points of Error Relating to Evidentiary Sufficiency*

■ In points of error ten through fourteen, appellant claims that he is entitled to a judgment of acquittal because the evidence adduced at the guilt/innocence stage of his trial was both legally and factually insufficient to support the jury's finding of guilt. Appellant was charged with, and found guilty of, intentionally committing murder while in the course of committing robbery, burglary, aggravated sexual assault, and arson. The State presented forty witnesses (law enforcement personnel, forensic serologists, friends of the victim, etc.) and numerous exhibits at the guilt/innocence stage in an attempt to prove its case, and appellant presented four witnesses in his defense. Viewed in the light most favorable to the jury's verdict, the evidence presented established the following:

Early on the evening of September 24, 1996, Vicki Ann Garner entertained a friend at Garner's residence in Tyler. The friend left around 8:15 p.m. Sometime between 9:00 p.m. and 10:00 p.m. that same evening, appellant met with John T. Robertson at Robertson's residence in Tyler. Robertson's residence was located less than one mile from Garner's residence. Appellant gave Robertson several small household appliances and other items in exchange for five "rocks" of "crack" cocaine. One of the appliances was an RCA-brand television-videocassette recorder (TV–VCR), serial number 619320052.

At around 6:45 a.m. the next morning, the Tyler Fire Department received a telephone call reporting a fire at Garner's residence. Tyler firemen responded immediately and arrived at the residence a few minutes later. The firemen forced open the front and back doors to the residence, which had been locked, and entered. Once inside, they found much smoke but little fire. They also found Garner's body in a bedroom. She was positioned face down on the floor, naked below the waist, her head and body battered and partially burned, her hands tied together with a cord. There was also a belt around her neck and ligature marks on her ankles. The residence itself appeared to have been ransacked, and the fire appeared to have been deliberately set.

A subsequent search of the residence by Tyler police revealed, among other things, an instruction manual for an RCA-brand TV–VCR. The serial number of the appliance was noted on the instruction manual as 619320052. The police also found a palm print matching appellant's on a kitchen cabinet.

An autopsy of Garner's body revealed that she died from manual strangulation. The autopsy also revealed the presence of spermatozoa in her vagina. Tests on that sperm revealed DNA[1] with characteristics that, in many respects, paralleled the characteristics of appellant's DNA. Such a DNA "match" could be expected from only one male in 170,000.

■ We turn first to the question of legal sufficiency. Consistent with the Fourteenth Amendment's guarantee of due process of law, a criminal defendant may not be convicted of an offense and denied his liberty except upon proof sufficient to persuade a rational factfinder of guilt beyond a reasonable doubt. *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982). In assessing the "legal" sufficiency of the evidence, under the Fourteenth Amendment, to support a conviction, we consider all of the record evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could

---

1. DNA (deoxyribonucleic acid) is an organic molecule that is found in all living cells. See *Kelly v. State,* 824 S.W.2d 568, 569 n. 1 (Tex. Crim.App.1992).

have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155, 158–159 (Tex.Crim.App.1981). Furthermore, when we undertake to review the sufficiency of the evidence and, as was the case here, the trial court's charge authorized the jury to convict on several different theories, the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories. *Rabbani v. State*, 847 S.W.2d 555, 558–559 (Tex.Crim.App.1992). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires that we reverse and order a judgment of acquittal. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

Applying these principles to the case at bar, we conclude that the evidence is not legally insufficient. Based on the circumstantial evidence presented at trial, a rational jury could have concluded beyond a reasonable doubt that sometime between 8:15 p.m. and 10:00 p.m. on September 24, 1996, appellant entered Garner's home, sexually assaulted[2] her and then intentionally killed her, stole her property, and then set fire to her home in an attempt to hide his culpability.

 We turn next to the question of factual sufficiency. Our state constitution allows an appellate court to reverse a judgment of conviction where the evidence preponderates greatly against a finding of guilt. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996). In assessing the "factual" sufficiency of the evidence, under *Clewis v. State*, to support a conviction, we consider all of the evidence in a neutral light, comparing the evidence which tends

to prove guilt to the evidence, if any, which tends to disprove guilt, and we determine whether the evidence preponderates greatly against the jury's finding of guilt. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim.App.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). If the evidence preponderates greatly against the jury's finding of guilt, then we must remand for a new trial, so that a second jury will have a chance to evaluate the evidence.[3] *Clewis v. State*, 922 S.W.2d at 133–134.

The record evidence that tends to prove appellant's guilt is strong, and we have found no record evidence that tends to disprove his guilt. Therefore, we hold that the evidence is not factually insufficient. We overrule points of error ten through fourteen.

 In point of error 73, appellant contends that the evidence adduced at trial was legally insufficient to support the jury's affirmative answer to the first punishment issue, concerning his future dangerousness. Under the first punishment issue, the jury was asked to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Art. 37.071, § 2(b)(1).[4] The State had the burden of proving the punishment issue beyond a reasonable doubt. Art. 37.071, § 2(c). Thus, the State had the burden of proving beyond a reasonable doubt that there is a probability that appellant, if allowed to live, would commit criminal acts of violence in the future, so as to constitute a continuing threat, whether in or out of prison. *Narvaiz v. State*, 840 S.W.2d at 424. In its determination of the issue, the jury was entitled to consider all of the evidence presented at both the guilt/innocence and

---

2. See Tex. Pen.Code § 22.021 (defining aggravated sexual assault).

3. We have yet to decide what an appellate court should do if the *second* jury reaches the same verdict on the same evidence. But see

*Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 2219 n. 18, 72 L.Ed.2d 652 (1982); Tex.R. Civ. Proc. 326.

4. All references to articles are to those in the Texas Code of Criminal Procedure.

punishment stages of trial. *Valdez v. State,* 776 S.W.2d 162, 166–167 (Tex.Crim. App.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). As an appellate court reviewing the jury's finding, we must view all of the evidence before the jury in the light most favorable to its finding, and then determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that the answer to the first punishment issue was "yes." *Harris v. State,* 738 S.W.2d 207, 225–226 (Tex.Crim.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

Viewed in the necessary light, the evidence at the punishment stage established that appellant committed an extraneous triple murder in Dallas on October 25, 1978. Furthermore, psychiatric evidence at the punishment stage established that appellant has an anti-social personality disorder, that the disorder is permanent, and that he is inherently violent and lacks any regard for the welfare of others. We hold that, based on the totality of the evidence presented at trial, a rational jury could have found beyond a reasonable doubt that appellant is dangerous and incorrigible and that the answer to the first punishment issue is "yes." We overrule point of error 73.

*Points of Error Relating to Appellant's Challenges for Cause*

In points of error 48, 49, and 52–56, appellant argues that the trial court erred in denying his challenges of various veniremen for cause under Article 35.16. The record reflects that appellant exhausted his peremptory challenges, that he asked for more, that the trial court granted him one more, and that appellant identified two jurors on whom he would have exercised peremptory challenges. Therefore, if we determine that two or more of appellant's challenges for cause should have been granted, reversible error would be shown.

*Martinez v. State,* 763 S.W.2d 413, 415 (Tex.Crim.App.1988).

 In point of error 48, appellant argues that the trial court erred in denying his challenge of Venireman Richardson for cause. Appellant contends that Richardson was challengeable for cause under Article 35.16 for three reasons: first, because he stated he would automatically answer the first two punishment issues (future dangerousness, "anti-parties")[5] in the affirmative if the defendant were found guilty as a principal; second, because he stated he would place the burden of proof on the defense to prove the defendant would not be a future danger; and third, because he stated he would place the burden of proof on the defense to prove the existence of mitigating circumstances.

The record reflects that, upon questioning by defense counsel, Richardson stated that if the defendant were found guilty of capital murder as a principal, then he would be "inclined" to answer the special issues in such a way that the death penalty would be assessed, especially if the defendant presented no mitigating evidence. Richardson also told defense counsel that he could not conceive of a situation in which a life sentence would be appropriate for someone found guilty of capital murder as a principal. The record reflects further, however, that upon questioning by the State and the court, Richardson stated repeatedly that he would follow the law and hold the State to its burden of proof on the special issues, and that he would answer the special issues based on the evidence and not based on emotion.

 Article 37.071, § 2(c), requires the State to prove the future dangerousness and "anti-parties" special issues beyond a reasonable doubt. Therefore, any venireman who would automatically answer those special issues in the affirmative, or who would place the burden of proof on the defense, is challengeable for

---

**5.** See Article 37.071, § 2(b).

cause under Article 35.16(c)(2) for having a bias or prejudice against a law applicable to the case upon which the defense is entitled to rely. *Banda v. State,* 890 S.W.2d 42, 57 (Tex.Crim.App.1994), *cert. denied,* 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). However, there is no law placing the burden of proof on the State as to the mitigation issue, so a venireman is not challengeable for cause simply because he would place the burden of proof on mitigation on the defense. See *Barnes v. State,* 876 S.W.2d 316, 329–330 (Tex.Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994).

The trial court has discretion in ruling on challenges for cause, and its rulings will not be upset on appeal absent an abuse of that discretion. *Banda v. State,* 890 S.W.2d at 53–54. An appellate court must examine the record as a whole to determine whether there is support for the trial court's rulings, and, in doing so, the appellate court must give deference to the trial court, which was in a position to actually see and hear the venireman. *Ibid.* If a venireman vacillated or equivocated with respect to his ability to follow the law, the appellate court must defer to the trial court's judgment. *Brown v. State,* 913 S.W.2d 577, 580 (Tex.Crim.App.1996).

We discern no abuse of discretion on the part of the trial court. On this record, the trial court could have reasonably concluded that Venireman Richardson would follow the law with respect to the burden of proof on the special issues and that he would answer those issues honestly, based only on the evidence presented. We overrule point of error 48.

In point of error 49, appellant argues that the trial court erred in denying his challenge of Venireman Rumbelow for cause. Appellant contends that Rumbelow was challengeable for cause under Article 35.16 because he was unable to consider the full range of punishment for the lesser included offense of murder.

The record reflects that, upon questioning by defense counsel, Rumbelow stated that he could consider assessing the minimum punishment if the defendant were found guilty of the lesser included offense of murder. Rumbelow also stated, however, that he could not, at that moment, imagine a set of facts in which the minimum punishment would be appropriate.

A venireman who states that he could not consider the full range of punishment for any offense of which the accused might be found guilty is challengeable for cause under Article 35.16(b)(3) and (c)(2) for having a bias or prejudice against the law. *Johnson v. State,* 982 S.W.2d 403, 405 (Tex.Crim.App.1998); *Jordan v. State,* 635 S.W.2d 522, 523 (Tex.Crim.App.1982). The venireman "must be able to keep an open mind with respect to punishment until [he] hear[s] the evidence in the case being tried." *Johnson v. State,* 982 S.W.2d at 406. However, a venireman is not challengeable for cause simply because he cannot immediately envision a scenario in which the minimum punishment would be appropriate. The mere fact that a venireman cannot envision such a scenario during *voir dire* does not indicate that he could not consider the minimum punishment if an appropriate scenario presented itself at trial. Thus, we discern no abuse of discretion in the trial court's denial of appellant's challenge of Rumbelow for cause. We overrule point of error 49.

In point of error 52, appellant argues that the trial court erred in denying his challenge of Venireman McKay for cause. Appellant contends that McKay was challengeable for cause under Article 35.16 because, as the record reflects, he stated that he would tend to believe the testimony of policemen and doctors slightly more than the testimony of others if the policemen and doctors were testifying about matters within their expertise. The record also reflects that McKay stated that he would not automatically believe policemen or doctors and that he would listen to

all of the evidence before making up his mind about the facts.

A venireman is challengeable for cause under Article 35.16(a)(9) if he cannot impartially judge the credibility of witnesses. *Jones v. State,* 982 S.W.2d 386, 389 (Tex.Crim.App.1998). However, this means only that jurors must be open-minded and persuadable, with no *extreme* or *absolute* positions regarding the credibility of any witness. *Ibid.* Veniremen are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility, because "[c]omplete impartiality cannot be realized as long as human beings are called upon to be jurors." *Ibid.* Thus, McKay was not challengeable for cause because he would tend to believe policemen and doctors slightly more than others. *Smith v. State,* 907 S.W.2d 522, 531 (Tex. Crim.App.1995). We overrule point of error 52.

In point of error 53, appellant argues that the trial court erred in denying his challenge for cause against Venireman Pate. Appellant contends that Pate was challengeable because he would not afford appellant the presumption of innocence.

The record reflects that, upon questioning by defense counsel, Pate stated that he "leaned" in the direction of believing appellant guilty simply because appellant had been arrested and indicted. The record also reflects, however, that, upon questioning by the State and by the trial court, Pate stated repeatedly that he could follow the law, hold the State to its burden of proof, and presume the defendant innocent.

Under the Due Process Clause of the Fourteenth Amendment, all persons are presumed innocent, and no person may be convicted unless each element of the offense is proved by the prosecution beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Therefore, a venireman who cannot presume the defendant

innocent is challengeable for cause under Article 35.16(c)(2) for having a bias or prejudice against the law. *Banda v. State,* 890 S.W.2d at 55.

We discern no abuse of discretion in the trial court's denial of appellant's challenge of Pate. On the record before us, the trial court could have reasonably concluded that Pate would follow the law and afford appellant the presumption of innocence. We overrule point of error 53.

In point of error 54, appellant argues that the trial court erred in denying his challenge of Venireman Musselman for cause. Appellant contends that Musselman, too, was challengeable because he would not afford appellant the presumption of innocence.

The record reflects that, upon questioning by defense counsel, Musselman stated that since appellant had been arrested and indicted, "it's only natural that [one] would think that there's a suggestion of . . . guilt in that situation." Musselman went on to state to defense counsel that "where there's smoke, there's fire" and that "if someone is on trial, there's at least some reason for them to have been brought in before the court." The record also shows, however, that, upon questioning by the State and by the trial court, Musselman, like Pate before him, stated repeatedly that he could honestly hold the State to its burden of proof and presume appellant innocent.

Again, we discern no abuse of discretion. On this record, the trial court could have reasonably concluded that Musselman would follow the law with respect to the presumption of innocence. We overrule point of error 54.

In point of error 55, appellant argues that the trial court erred in denying his challenge for cause against Venireman Boyd. Appellant contends that Boyd was challengeable for two reasons: first, because Boyd would not presume appellant innocent, and second, because "[o]nce

[Boyd] concluded that [appellant] was guilty of capital murder, he would automatically vote for a death sentence."

The record reflects that, upon questioning by defense counsel, Boyd stated that he would expect appellant to present evidence of his innocence, and that if he found appellant guilty, he would be "inclined" to answer the special punishment issues in such a manner that the death penalty would be assessed. The record also reflects, however, that, upon questioning by the State and by the trial court, Boyd stated repeatedly that he would follow the law and hold the State to its burden of proof, and that he would answer the special issues based on the evidence presented.

We discern no abuse of discretion. Given the totality of Boyd's voir dire, the trial court could have reasonably concluded that Boyd would, in fact, follow the law with respect to the burden of proof and that he would answer the special issues based on the evidence adduced at trial. We overrule point of error 55.

■ In point of error 56, appellant argues that the trial court erred in denying his challenge of Venireman Johnson for cause. Appellant argues that Johnson was challengeable because she had "heard significant pre-trial publicity and knew that [he] had a criminal record." Appellant argues further that "[Johnson's] claims that she could put aside her feelings and judge [him] impartially cannot be believed."

Johnson revealed during voir dire that one evening while she was cooking in her kitchen, she heard a news report about the murder of Vicki Garner. She stated further that she had not paid close attention to the report and could not recall "what all was said," but that she did recall that there was "something [in the report] about probation, that [the suspect] might have

been on probation for something." The record reflects further that Johnson stated repeatedly that she would ignore what she had heard in the news report, presume appellant innocent, and base her decisions at trial solely on the evidence presented.

■ Under Article 35.16(a)(10), a venireman is challengeable for cause "if there is established in the mind of the [venireman] such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict." However, a prospective juror is not challengeable for cause merely because he has heard news reports about the crime or the suspect. *Macias v. State*, 733 S.W.2d 192, 193 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). We discern no abuse of discretion and overrule point of error 56.

### *Points of Error Relating to Other Jury Selection Issues*

In points of error 40 and 41, appellant argues that the trial court violated his Sixth Amendment right to an impartial jury[6] and his Fourteenth Amendment right to due process of law when it "*sua sponte* rehabilitate[d] eight disqualified [veniremen]." We need not address this argument, however, because it was not raised in the trial court. Tex.R.App. Proc. 33.1. We overrule points of error 40 and 41.

■ In points of error 42–44, appellant argues that the trial court violated his Sixth Amendment right to an impartial jury and his Fourteenth Amendment right to due process of law when it refused to alternate, as between the State and the Defense, the opportunity to initiate the questioning of each venireman. Appellant argues:

[T]here is tremendous advantage to being the first to question a juror individually. Most jurors have never given

---

**6.** The Sixth Amendment right to an impartial jury was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966).

much thought to the death penalty, the circumstances which call for it, the social policy behind it, or the mitigating circumstances which might require waiving it. Therefore, the first lawyer to ask questions has the ability to shape the juror's views to some extent and disqualify the juror if unfavorable to his or her position. Since the State usually goes first on every juror, all of these benefits flow to the prosecution, which uses them to the full extent to obtain a death-favorable jury.

Appellant offers no authority, persuasive or otherwise, in support of his argument.

We are unpersuaded by appellant's psychological speculations, and we find his lack of authority unsurprising. Indeed, it may be the case that, generally, the lawyer who questions a potential juror *last* has the greater ability "to shape the juror's views." We overrule points of error 42–44.

In points of error 45–47, appellant argues that the trial court violated his Sixth Amendment right to an impartial jury and his Fourteenth Amendment rights to due process and equal protection when it denied his motion to postpone the exercise of peremptory challenges until the completion of voir dire. We have rejected such arguments before. *Dowthitt v. State*, 931 S.W.2d 244, 251 (Tex.Crim.App.1996); *Janecka v. State*, 739 S.W.2d 813, 833–834 (Tex.Crim.App.1987). We overrule points of error 45–47.

In point of error 50, appellant argues that the trial court erred in granting the State's challenge of Venireman Robinson for cause. Appellant concedes, and the record reflects, that the trial court granted the State's challenge because Robinson withheld material information when answering her juror questionnaire.

■ To show error in the trial court's grant of a State's challenge for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or

that the trial court abused its discretion in applying the correct legal standard. *Vuong v. State*, 830 S.W.2d 929, 943 (Tex. Crim.App.), *cert. denied*, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Moreover, to obtain a reversal because of the error, an appellant must show that the error actually deprived him of a fair and impartial jury. *Jones v. State*, 982 S.W.2d at 394. Appellant does not argue that the alleged error deprived him of a fair and impartial jury. Therefore, we overrule point of error 50.

In point of error 113, appellant argues that the trial court erred in granting the State's challenge for cause against Venireman Loftin. Appellant concedes, however, that he did not object to the trial court's action.

■ We need not address this point of error. "It is well-settled that if [a defendant] fails to object when a venireperson is excused for cause, he or she may not subsequently challenge that ruling on appeal." *Kemp v. State*, 846 S.W.2d 289, 302 (Tex. Crim.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). See Tex.R.App. Proc. 33.1. We overrule point of error 113.

In point of error 51, appellant argues that the trial court violated his Fourteenth Amendment right to equal protection when it allowed all the veniremen to be questioned about any criminal records that they, their families, or their close friends might have. Appellant argues that "[t]his practice ha[d] a disproportionate impact on minority representation on capital juries because minorities have disproportionate rates of arrest and conviction [compared to] whites." We need not consider this argument, however, because it was not raised in the trial court. Tex.R.App. Proc. 33.1. We overrule point of error 51.

■ In points of error 58–60, appellant argues that the trial court erred in overruling his *Batson*[7] objections to the

---

**7.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

State's exercise of peremptory challenges against Veniremen Williams, Booker, and Davis, respectively. Appellant contends that the State's use of peremptories against these three veniremen, all of whom were African–American, was racially motivated.

The record reflects that, at the insistence of the trial court, the State offered race-neutral explanations for its peremptory strikes of the veniremen in question. The prosecutor explained that he struck Williams because (1) her son had an extensive and serious criminal record, (2) she had substantially misrepresented her son's criminal record, and (3) she believed that capital punishment was cruel. The prosecutor explained that he struck Booker because (1) he believed that capital punishment "never ought to be invoked" and (2) the State "had a concern that [Booker] might violate his oath" and find appellant guilty only of murder when the evidence supported a verdict of guilty of capital murder. Finally, the prosecutor explained that he struck Davis because (1) she vacillated in her support of capital punishment, (2) it was "clear" she did not want to be on the jury, and (3) she had a niece facing prosecution under the Texas Controlled Substances Act.

■■■ The use of peremptory challenges to exclude persons from the petit jury because of their race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1716–1717, 90 L.Ed.2d 69 (1986). Either party in a criminal trial may object to the other party's use of a peremptory challenge as an equal protection violation. *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 2357, 120 L.Ed.2d 33 (1992). The objecting party

must first make a *prima facie* showing that the other party has used a peremptory challenge to remove a venireman on account of race. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). Once the objecting party has made a *prima facie* showing of purposeful discrimination (step one), the burden of production shifts to the other party to come forward with a race-neutral explanation (step two). *Ibid.* If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the objecting party has proven purposeful discrimination.[8] *Ibid.* Since the trial court's decision will turn largely on an evaluation of credibility, the appellate court must give that decision great deference and must not disturb it unless it is clearly erroneous. *Robinson v. State,* 851 S.W.2d 216, 226 (Tex.Crim.App.1991), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

We discern no clear error in the trial court's denial of appellant's *Batson* objections. On this record, the trial court could have reasonably concluded that the State's race-neutral explanations were sincere and that the peremptory strikes in question were not racially-motivated. We overrule points of error 58–60.

■■ In point of error 57, appellant argues that the trial court erred in overruling his objection to the State's request for a jury shuffle. Appellant argues that the State's request was racially-motivated and that *"Batson* naturally extends to [jury] shuffles."[9]

The record reflects that after the trial court qualified the venire, the State, acting pursuant to Article 35.11, requested that the venire be randomly shuffled. Appel-

---

8. Once the responding party has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of purposeful discrimination, the preliminary issue of whether the objecting party made a *prima facie* case becomes moot. *Malone v. State,* 919 S.W.2d 410, 412 (Tex.Crim.App.1996).

9. One scholar has argued that, logically, *Batson* should extend to jury shuffles. See E. Carlson, *Batson, J.E.B., and Beyond: The Paradoxical Quest for Reasoned Peremptory Strikes in the Jury Selection Process,* 46 Baylor L.Rev. 947, 982 (1994). We wish to make it clear, however, that we do not endorse such a view.

lant objected to the shuffle on the ground that "seven of the first several are black panel members, and [a shuffle] will change the racial make-up." Appellant did not mention *Batson* or the Equal Protection Clause, nor did he allege purposeful racial discrimination. The trial court overruled appellant's objection, and the venire was shuffled. Immediately thereafter, out of an abundance of caution, the trial court directed the State to explain its request for a shuffle. The prosecutor explained that he requested a shuffle because (1) its records showed that "individuals in the first area had more criminal histories ... than the other individuals," (2) among the first several veniremen, "there seemed to be not as many people with coats and ties and [too few] elderly professional people," and (3) a probation officer was among the first veniremen, and the State "did not want to have to strike someone in the adult probation office and run the risk of hurting her feelings." The trial court then ruled that the prosecutor's motivations for the shuffle were racially neutral.

Assuming *arguendo* that *Batson* extends to jury shuffles, we find no clear error in the trial court's overruling of appellant's objection. On this record, the trial court could have reasonably concluded that the State's race-neutral reasons were sincere and that its request for a shuffle was not racially-motivated. We overrule point of error 57.

### Points of Error Relating to the Guilt/Innocence Stage of Trial

 In points of error one through six and 68, appellant argues that the trial court erred in instructing the jury that it could convict him under the law of parties as defined in Texas Penal Code § 7.02(b). Appellant contends that application of § 7.02(b) in a capital murder prosecution violates the Eighth Amendment's ban on

cruel and unusual punishment[10] and the Fourteenth Amendment's guarantee of due process and equal protection. Appellant concedes that none of these constitutional arguments was raised in the trial court, but he argues that we should consider the trial court's action as fundamental charge error and reviewable under Article 36.19 as interpreted in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

Appellant's failure to object was not excused by Article 36.19 and *Almanza v. State*, because they are applicable only to violations of Articles 36.14 through 36.18 "which do not implicate state or federal constitutional rights." *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994). Therefore, since appellant did not raise his constitutional arguments below, we will not consider them now. Tex.R.App. Proc. 33.1. We overrule points of error one through six and 68.

 In point of error 67, appellant argues that the trial court erred in instructing the jury that it could convict him under the law of parties as defined in Texas Penal Code § 7.02(a)(2) and (b). Appellant argues that the evidence at trial did not support such a parties instruction.

 In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *McCuin v. State*, 505 S.W.2d 827, 830 (Tex.Crim.App.1974). Our review of the record reveals that the evidence adduced at trial would not support a jury verdict that appellant is criminally responsible under the law of parties. Therefore, the trial court erred in submitting the parties instruction. Nevertheless, "[w]here [as in the instant case] the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is

---

**10.** The Eighth Amendment's ban on cruel and unusual punishment was made applicable to the states by the Due Process Clause of the

Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 1420–1421, 8 L.Ed.2d 758 (1962).

harmless." *Black v. State*, 723 S.W.2d 674, 675 (Tex.Crim.App.1986). In other words, because there was no evidence tending to show appellant's guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor. We overrule point of error 67.

■ In points of error seven and eight, appellant argues that the trial court defined "conspiracy" incorrectly in the jury charge. Appellant contends that the trial court should have defined "conspiracy" in accordance with the definition of "criminal conspiracy" in Texas Penal Code § 15.02(a).

The record reflects that the trial court, in explaining the law of parties under Texas Penal Code § 7.02(b), instructed the jury as follows:

> You are ... instructed that, if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, then all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. Capital murder, murder, robbery, burglary of a building, aggravated sexual assault, and arson are felonies.

> By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from acts of the parties.

We discern no error. The Penal Code provides no definition for "conspiracy" as that term is used in § 7.02(b). See Tex. Pen.Code § 1.07. Therefore, the trial court need not have defined the term, but it certainly did not err in instructing the jury to give the term its commonly understood meaning. See *Hogan v. State*, 496 S.W.2d 594, 599 (Tex.Crim.App.1973); M. McCormick, T. Blackwell & B. Blackwell, *Texas Criminal Forms and Trial Manual* § 101.02 (1995). We overrule points of error seven and eight.

In point of error nine, appellant argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, when he failed to object to the definition of "conspiracy" contained in the jury charge at the guilt/innocence stage.[11] The Sixth Amendment guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Id.* at 2064. A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Id.* at 2069.

We discern no Sixth Amendment violation. As we have already noted, the definition of "conspiracy" in the charge was not erroneous. Therefore, trial counsel did not err in failing to object to it. We overrule point of error nine.

■ In points of error seventeen and eighteen, appellant argues that the trial

court erred in exempting the victim's parents, Gene and Betty Garner, from his invocation of "the Rule," *i.e.,* Texas Rule of Criminal Evidence 613.[12] Appellant contends that "the testimony of the [Garners] corroborated that of other witnesses" and that "[t]he State could not have made a case without the Garners."[13]

At the State's request, the trial court granted the Garners an exemption from Rule 613 sequestration. The record reflects that the trial court acted in the belief that Article 56.02(b) allowed such an exemption. However, Article 56.02(b), by its explicit terms, applies only to victims, not to the parents of victims. Thus, the trial court erred in granting the Garners an exemption. Still, we need not reverse if we determine that the error did not affect appellant's substantial rights. Tex.R.App. Proc. 44.2(b). In other words, we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).

The record reflects that both Gene and Betty Garner testified during the guilt/innocence stage of trial. Gene Garner testified, in relevant part, that his daughter owned a microwave oven and TV–VCR that, other evidence showed, appellant gave to Robertson in exchange for cocaine. He also testified that his daughter owned costume jewelry similar to jewelry seized from appellant at the time of his arrest. Betty Garner, who took the witness stand immediately after her husband, testified, in relevant part, that her daughter owned a telephone, blender, clock, and toaster that, other evidence showed, appellant gave to Robertson in exchange for cocaine. She also testified that her daughter owned jew-

elry taken from appellant at the time of his arrest.

On this record, we have fair assurance that the trial court's error did not influence the jury's deliberations to appellant's detriment or had but a slight effect. Although the Garners heard the testimony of many other witnesses before they testified themselves, the Garners' testimony did not contradict or corroborate the testimony of the other witnesses, nor did Betty Garner's testimony contradict or corroborate that of her husband. In short, we can say with fair assurance that the Garners' hearing of the preceding testimony did not materially affect their own testimony. We overrule points of error seventeen and eighteen.

In point of error nineteen, appellant argues that the trial court violated his Fourteenth Amendment right to due process when the court exempted the Garners from his invocation of Rule 613. We need not consider this constitutional argument, however, because it was not raised in the trial court. Tex.R.App. Proc. 33.1. We overrule point of error nineteen.

In point of error twenty, appellant argues that the trial court erred in denying his motion for mistrial. With respect to this point of error, the record reflects the following facts: The State asked a prosecution witness, "Mr. [Troy] Guthrie, were you aware of whether or not Mr. Ladd and Mr. [Johnny] Roberson were together smoking crack cocaine ... on the night ... and the morning that [the victim] was missing and was found?" Before the witness could answer, appellant objected, asked for an instruction to disregard, and moved for a mistrial. The trial court sustained the objection on the ground that the State's question violated a motion in limine. The trial court then instructed the

---

**12.** See now Tex.R. Evid. 614.

**13.** The purpose of the sequestration rule is to prevent the testimony of one witness from influencing the testimony of another. *Bell v.*

*State,* 938 S.W.2d 35, 50 (Tex.Crim.App. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997).

jury to disregard the question, but the court denied a mistrial.

 A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Sewell v. State,* 696 S.W.2d 559, 560 (Tex. Crim.App.1983). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Hernandez v. State,* 805 S.W.2d 409, 413–414 (Tex.Crim. App.1990), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. *Ibid.* A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Ibid.* A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993).

We discern no abuse of discretion in the trial court's denial of a mistrial. The question in issue did not actually assert that appellant was smoking cocaine on the night of the murder, and the trial court could have reasonably concluded that the question was not so inflammatory as to be incurable by an instruction to disregard. We overrule point of error twenty.

 In point of error 66, appellant argues that the trial court erred in denying another motion for mistrial. With respect to this point of error, the record reflects the following facts: The State asked a prosecution witness, "And at some point a few months before the fire, before the summer, was [the defendant] terminated from his [employment]?" The witness responded, "Yes, he was." At that point, appellant objected on the ground that the termination of his employment was "irrelevant and prejudicial." The trial court sustained appellant's objection and, at his request, instructed the jury to disregard the question and answer. Appellant then requested a mistrial, which the trial court denied.

In *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987), we explained:

> In the vast majority of cases in which ... testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence this Court puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations. Thus we say the harm deriving from the unresponsive answer has been "cured." This is true except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds.

(Some internal punctuation omitted.)

We discern no abuse of discretion in the denial of the mistrial. The trial court could have reasonably concluded that its instruction to disregard was sufficient to cure any harm. We overrule point of error 66.

 In point of error 21, appellant argues that the trial court violated Evidence Rule 404(b) when it admitted testimonial evidence that he smoked cocaine on the

night of the victim's murder. The State argues in response that the evidence in question was admissible to prove motive.

Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Therefore, we must determine whether the trial court could have concluded reasonably that the evidence in question was logically relevant for a purpose other than proof of appellant's bad character. See *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

We discern no abuse of discretion in the trial court's admission of the evidence. The trial court could have reasonably concluded that the extraneous offense evidence was admissible to help prove appellant's motive for the killing, to wit: to obtain the victim's property so that he could exchange it for cocaine. See *Knox v. State*, 934 S.W.2d 678, 682–683 (Tex.Crim. App.1996); *Etheridge v. State*, 903 S.W.2d 1, 10–11 (Tex.Crim.App.1994), *cert. denied*, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Even if we assumed *arguendo* that admission of the evidence was error, we do not believe the error affected appellant's substantial rights. See Tex.R.App. Proc. 44.2(b); Tex.R. Evid. 103(a). That is, given all of the evidence before the jury, we believe it quite unlikely that the admission of the evidence in question had a substantial effect on the jury's verdict. We overrule point of error 21.

In points of error 62 and 64, appellant argues that the trial court erred in admitting into evidence, over his Evidence Rule 403 objection, six photographs of the victim taken at the crime scene and seven photographs of the victim taken during the autopsy. Appellant argues that the photographs were gruesome and unfairly prejudicial.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Once a defendant objects to photographic evidence on the basis of unfair prejudice, the trial court must balance the probative value of the photographs against their potential for unfair prejudice. In accomplishing this task, the trial court must consider the host of factors affecting probativeness, including the relative weight of the evidence and the degree to which its proponent might be disadvantaged without it, and balance those factors against the tendency, if any, that the photographs have to encourage resolution of material issues on an inappropriate emotional basis. *Narvaiz v. State*, 840 S.W.2d at 429.

We discern no abuse of discretion in the admission of the photographs. The photographs are plainly probative of the manner of the victim's death, and they are not, in our estimation, particularly horrible. Indeed, they show no more than the gruesomeness of the crime scene and the nature of the victim's injuries. The trial court could have reasonably concluded that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. We overrule points of error 62 and 64.

In point of error 63, appellant argues that the trial court erred in admitting into evidence, over his Rule 403 objection, a silent, six-minute videotape of the crime scene. The videotape, made on September 25, 1996, offers a panoramic view of the crime scene, showing the position of the victim's body and the general disarray of the home. Appellant argues that the videotape was irrelevant and cumulative of the still photographs admitted into evidence.

■ Once a defendant objects to photographic evidence, including videotapes, on the basis of cumulativeness, the trial court must balance the probativeness of the evidence against the tendency, if any, that the evidence has to prolong the trial to the defendant's detriment. *Alvarado v. State*, 912 S.W.2d 199, 213 (Tex.Crim.App. 1995) (plurality). We discern no abuse of discretion in the admission of the videotape in question. The videotape, like the still photographs, was plainly probative of the manner of the victim's death. Furthermore, although the videotape was partially cumulative of the still photographs, the trial court could have reasonably concluded that the probative value of the videotape was not substantially outweighed by its tendency to prolong the trial. We overrule point of error 63.

In point of error 69, appellant argues that the trial court erred in admitting the testimony of the foreman of the grand jury that indicted him. We need not address point of error 69, however, because appellant did not object to the foreman's testimony. Tex.R.App. Proc. 33.1. We overrule point of error 69.

### Points of Error Relating to the Punishment Stage of Trial

In points of error 22–25, appellant argues that the State's closing argument at the punishment stage violated his constitutional rights to remain silent.[14] In particular, appellant complains of the prosecutor's comments that (1) he presented no expert testimony to rebut the State's expert testimony that he would be a future danger and (2) he had "such a lack of remorse." The record reflects that appellant failed to object below to the prosecutor's arguments.

■ We discern no reversible error. Appellant's failure to object in the trial court forfeited his right to complain on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); Tex.R.App. Proc. 33.1. We overrule points of error 22–25.

■ In point of error 26, appellant argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, when he failed to object to the prosecutor's comment on his failure to present expert testimony regarding his future dangerousness. We discern no Sixth Amendment violation in trial counsel's failure to object, however, because the prosecutor's comments were not objectionable. For there to be a violation of a defendant's right to remain silent because of an allusion to, or comment on, his failure to testify, the language used must be examined from the standpoint of the jury, and the implication that the language used had reference to such failure to testify must be a necessary one. *Koller v. State*, 518 S.W.2d 373, 375 (Tex.Crim.App.1975). Thus, the prosecutor did not err in commenting on appellant's failure to call defense witnesses other than himself. *Nowlin v. State*, 507 S.W.2d 534, 536–537 (Tex. Crim.App.1974). And, the prosecutor's comment on appellant's lack of remorse could have been interpreted by the jury as referring to the testimony of Dr. Tynus McNeel, a psychiatrist, who testified at the punishment stage that appellant had an anti-social personality disorder and had no remorse for his crimes. See *Fearance v. State*, 771 S.W.2d 486, 514 (Tex.Crim.App. 1988), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). We overrule point of error 26.

In points of error 27 and 28, appellant argues that three isolated portions of the

---

**14.** The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." This right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964). Texas Constitution article I, § 10, provides that "[i]n all criminal prosecutions the accused shall ... not be compelled to give evidence against himself."

State's closing argument at the punishment stage violated his Fourteenth Amendment right to due process. We need not address these points of error, however, because appellant did not object to the State's closing argument. *Cockrell v. State*, 933 S.W.2d at 89; Tex.R.App. Proc. 33.1. We overrule points of error 27 and 28.

In point of error 29, appellant claims that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, when he failed to object to the three isolated portions of the prosecutor's closing argument mentioned previously. As we have noted, an appellant can demonstrate a denial of the Sixth Amendment right to the reasonably effective assistance of counsel by proving (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the appellant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington,* 104 S.Ct. at 2064. Here, appellant has made no effort to prove the prejudice prong of the *Strickland* test. That failure precludes any relief. *Mitchell v. State,* 989 S.W.2d 747, 748 (Tex.Crim.App.1999). We overrule point of error 29.

In points of error 30–32, 34, and 35, appellant argues that, at the punishment stage, the trial court erred in not giving the jury "anti-parties" and "anti-conspiracy" charges. Appellant contends that the trial court's failure violated his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process. Appellant concedes, however, that he did not raise these constitutional arguments below. Appellant also does not explain precisely what his desired charges would have said to the jury.

We need not consider appellant's constitutional arguments, because they were not raised below. *Abdnor v. State,* 871 S.W.2d at 732; Tex.R.App. Proc. 33.1. In any event, the record reflects that the trial court gave the jury the instruction mandated by Article 37.071, § 2(b)(2), and that instruction, which forced the jury to focus exclusively on appellant's conduct, was, in essence, an "anti-parties" and "anti-conspiracy" instruction. See *McFarland v. State,* 928 S.W.2d 482, 516–517 (Tex.Crim. App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). We overrule points of error 30–32, 34, and 35.

In points of error 33 and 36, appellant argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, when he failed to request "anti-parties" and "anti-conspiracy" charges at the punishment stage. We discern no ineffectiveness of counsel, however. As we noted previously, the trial court instructed the jury in accordance with Article 37.071, § 2(b)(2), and that instruction was, in effect, an "anti-parties" and "anti-conspiracy" instruction. Therefore, trial counsel did not err in failing to ask for yet another instruction. We overrule points of error 33 and 36.

In points of error 37–39, appellant, who was 39 years old at the time of trial, argues that the trial court erred in refusing to instruct the jury that, if sentenced to life imprisonment, he would have to serve forty years before becoming eligible for parole. See Tex. Gov't Code § 508.145(b). Appellant argues that this information was relevant to the jury's consideration of the punishment issue on his future dangerousness, and that the trial court's refusal violated his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment rights to due process and equal protection.

We discern no error. The trial court was not required to instruct the jury on the parole law. See *Colburn v. State,* 966 S.W.2d 511, 516–517 (Tex.Crim.App. 1998); *Broxton v. State,* 909 S.W.2d 912, 919 (Tex.Crim.App.1995); *Smith v. State,* 898 S.W.2d 838, 847–853 (Tex.Crim.App.) (plurality), *cert. denied,* 516 U.S. 843, 116

S.Ct. 131, 133 L.Ed.2d 80 (1995). We overrule points of error 37–39.

■ In point of error 70, appellant argues that the trial court erred, at the punishment stage, in admitting into evidence poor-quality photocopies of photographs of an extraneous crime scene. Appellant complains that the photocopies "did not fairly and accurately portray the originals."

The record reflects that the trial court admitted the photocopies after the sponsoring witness testified that they accurately showed the crime scene as he had seen it. On this record, then, the trial court could have reasonably concluded that the photocopies were admissible under Evidence Rules 1001(4) and 1003. We overrule point of error 70.

■ In point of error 71, appellant argues that the trial court erred, at the punishment stage, in admitting "victim impact" evidence from the victim's mother and sister. The record reflects that both witnesses testified that the victim had many fine, endearing qualities and that her death had shattered the lives of her family.

■ We discern no error in the admission of the testimony. "Both victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence." *Mosley v. State*, 983 S.W.2d 249, 262 (Tex.Crim.App.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). We overrule point of error 71.

■ In point of error 72, appellant argues that the trial court erred in refusing to require the State to designate its victim impact witnesses in advance of trial. Appellant argues that the trial court's refusal violated his rights under the Texas and United States constitutions, but he neglects to specify which of his rights were violated. Furthermore, appellant concedes that "there appears to be no ...

harm caused by the failure of the State to designate its victim impact witnesses [because he] knew that the parents and two other relatives would testify." We agree with appellant that the trial court's error, if any, caused no harm. Tex.R.App. Proc. 44.2(b). We overrule point of error 72.

■ In point of error 74, appellant argues that the trial court erred, at the punishment stage, in denying his motion for mistrial after a prosecution witness referred to his "three or four juvenile arrests." Appellant argues that "[t]he testimony was damaging" and that "[n]o reasonable juror would be able to put out of his mind that [appellant] had been committing crimes all his life."

The record reflects that appellant objected to the witness' testimony, that the trial court sustained the objection, that appellant asked for an instruction to disregard, that the trial court gave such an instruction, that appellant then moved for a mistrial, and that the trial court denied a mistrial.

In the instant case, we believe that the trial court could have reasonably concluded that any harm caused by the testimony in question was cured by the prompt and thorough instruction to disregard. In our estimation, the witness' testimony was not so inflammatory that its prejudicial effect could not reasonably be regarded as removed by the instruction to disregard. We overrule point of error 74.

■ In point of error 75, appellant argues that the trial court erred, at the punishment stage, in admitting into evidence sixteen official disciplinary reports relating to his behavior while previously incarcerated in the state prison system. Appellant complains that the disciplinary reports were hearsay.

The record reflects that the disciplinary reports were included in State's Exhibit 154–P, a "penitentiary packet." The record reflects further that appellant objected to the entire packet as inadmissible hearsay. Appellant does not contend now,

however, that the entire packet was hearsay, implicitly conceding that the packet, minus the disciplinary reports, was admissible under Article 37.071, § 2(a). That being the case, we discern no error in the admission of the disciplinary reports. The trial court was not required, in the face of a global hearsay objection, to search through the penitentiary packet and segregate the admissible from the inadmissible. *Barnes v. State,* 876 S.W.2d at 329. We overrule point of error 75.

In points of error 76–78, appellant, who is African–American, argues that his death sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process and equal protection because "the administration of the death penalty ... in Texas is impermissibly influenced by racial discrimination." Appellant's argument is based purely on statistical studies that allegedly show that the death penalty is more likely to be assessed when the killer is black and, especially, when the victim is white. This argument, however, has been addressed and rejected by this Court before. *Cantu v. State,* 939 S.W.2d 627, 649 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997); *Bell v. State,* 938 S.W.2d 35, 51–52 (Tex.Crim. App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997). We overrule points of error 76–78.

■ In points of error 79–81, appellant argues that his death sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process and equal protection because "Smith County administers the death penalty in a manner that falls disproportionately on minorities." Appellant does not offer, however, any evidence specific to his case that would support an inference that racial considerations played a part in the prosecution. In the absence of such evidence, his claims do not show reversible error. *Cantu v. State,* 939 S.W.2d at 649;

*Bell v. State,* 938 S.W.2d at 51–52. We overrule points of error 79–81.

■ In points of error 82–87, appellant argues that his death sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process and equal protection because the first special punishment issue, regarding the defendant's future dangerousness, "provides considerable opportunity for racial consideration, however subtle and unconscious, to influence [the] sentencing decision." Appellant argues further that various statistical studies "indicate that blacks are more likely to be perceived as a future threat to society." Again, however, appellant offers no evidence specific to his case that would support an inference of racial discrimination by the decision makers in his case.

Special issue one, pertaining to the defendant's future dangerousness, is worded in a racially-neutral manner. Therefore, again, in the absence of evidence that the decision makers *in appellant's case* acted with discriminatory intent, appellant's constitutional claims must fail. *Cantu v. State,* 939 S.W.2d at 649; *Bell v. State,* 938 S.W.2d at 51–52. We overrule points of error 82–87.

■ In points of error 88 and 89, appellant argues that his death sentence violates his state and federal constitutional rights to due process and to be free of cruel and unusual punishment because the jury instructions at punishment failed to define "criminal acts of violence," "probability," "continuing threat," and "society," as those terms were used in the first special punishment issue. Appellant argues that these terms are "facially vague," and that "[a]s a result [of the terms not being defined for the jury], there is a constitutionally unacceptable risk that [the] jury concluded that he did pose a continuing threat to society."

We discern no error. The trial court need not define such terms, because the

jury is presumed to understand them without instruction. *Camacho v. State*, 864 S.W.2d 524, 536 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). We overrule points of error 88 and 89.

■ In points of error 90 and 92–94, appellant argues that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process because the second special punishment issue, the "anti-parties" issue mandated by Article 37.071, § 2(b)(2), "permits a capital sentencing jury to impose a death sentence based on a finding that the defendant ... simply 'anticipated' that death might occur."

■ The Eighth Amendment prohibits death sentences that, according to contemporary social standards, are disproportionate for certain crimes or individuals. In *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), the Court upheld death sentences for persons who had not actually intended to kill but had exhibited a reckless disregard for human life *and* had played a major role in their crime. The Court found that society had approved the death penalty for defendants with such a culpable mental state and that two of the goals of criminal sentencing—retribution and deterrence—were met by executing this subset of felony murderers.

Article 37.071, § 2(b)(2), allows the death penalty for defendants who participate in a crime and who actually anticipate that a human life will be taken. *Anticipating that a human life will be taken* is a highly culpable mental state, at least as culpable as the one involved in *Tison v. Arizona*, and we hold that, according to contemporary social standards, the death penalty is not disproportionate for defendants with such a mental state. Furthermore, we find that both retribution and deterrence are plainly furthered by executing this subset of murderers. In short, we

hold that neither the Eighth Amendment's ban on cruel and unusual punishment nor the Fourteenth Amendment's guarantee of due process of law are offended by the execution of defendants who participate in crimes anticipating that a human life will be taken. We overrule points of error 90 and 92–94.

In point of error 91, appellant argues that his death sentence violates his Fourteenth Amendment right to equal protection because the second special issue, mandated by Article 37.071, § 2(b)(2), permits the death penalty for one who participates in a crime anticipating that a human life will be taken. Appellant offers no argument or authority, however, with respect to the protection afforded by the equal protection guarantee or how it relates to the second special issue. We will not make appellant's argument for him. We overrule point of error 91.

In points of error 95 and 100, appellant contends that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process because "the open-ended and unstructured nature of Article 37.071 ... prevents meaningful appellate review" of the jury's answer to the special issue on mitigation. See Article 37.071, § 2(e). Appellant contends that "the Court of Criminal Appeals is required by ... the Constitution to review the sufficiency of the evidence supporting the jury's negative answer to the [mitigation] special issue." We have rejected such arguments before. *McFarland v. State*, 928 S.W.2d at 499; *Lawton v. State*, 913 S.W.2d 542, 556–557 (Tex. Crim.App.1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). We overrule points of error 95 and 100.

In point of error 96, appellant argues that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process because Article 37.071 does not assign to the State the burden of proof on the mitigation spe-

cial issue. We have rejected such arguments before. *Williams v. State,* 937 S.W.2d 479, 491 (Tex.Crim.App.1996); *Lawton v. State,* 913 S.W.2d at 557–558. We overrule point of error 96.

In point of error 97, appellant argues that "the Eighth Amendment requires this Court to conduct a proportionality review by comparing the facts of the case with all previous cases in the state in which the death penalty was imposed for the same capital crime." We have rejected such arguments before. *Anderson v. State,* 932 S.W.2d 502, 508–509 (Tex.Crim.App.1996), *cert. denied,* 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997). We overrule point of error 97.

In points of error 98 and 99, appellant argues that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process because the jury was not given "a charge that adequately structure[d][its] discretion regarding mitigating and aggravating factors." We have rejected such arguments before. *McFarland v. State,* 928 S.W.2d at 520; *Lawton v. State,* 913 S.W.2d at 558. We overrule points of error 98 and 99.

In point of error 101, appellant argues that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment because the statutory definition of "mitigating evidence," utilized by the jury in answering the mitigation special issue, limited such evidence to evidence "that a juror might regard as reducing the defendant's moral blameworthiness." See Article 37.071, § 2(f)(4). We have rejected such arguments before. *King v. State,* 953 S.W.2d at 274; *Cantu v. State,* 939 S.W.2d 627, 648–649 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997); *Lawton v. State,* 913 S.W.2d at 555–556. We overrule point of error 101.

In points of error 102–107, appellant argues that his death sentence violates his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment rights to due process and equal protection because the jurors were instructed that they may not answer any of the special issues in a manner that would favor appellant unless at least ten jurors agree to that answer. See Article 37.071, § 2(d)(2) & (f)(2). Appellant argues that the jurors should have been informed explicitly that a single juror could force a life sentence by voting favorably to the defendant on any of the special issues. We have rejected such arguments before. *McFarland v. State,* 928 S.W.2d at 519; *Lawton v. State,* 913 S.W.2d at 558–559. We overrule points of error 102–107.

In point of error 108, appellant argues that his death sentence violates his rights (he does not specify which rights) under the Eighth and Fourteenth Amendments because Texas law gives the prosecutor complete discretion whether to seek the death penalty in a capital murder case. We have rejected such arguments before. *McFarland v. State,* 928 S.W.2d at 510–511. We overrule point of error 108.

In point of error 109, appellant argues that "[t]he Texas capital punishment scheme violate[s] the Eighth [and] Fourteenth Amendments because it fails to provide for a life sentence without parole." Appellant offers no argument or authority for this point of error, however, and we will not make his argument for him. We overrule point of error 109.

In points of error 110 and 111, appellant argues that his death sentence violates his rights under the Eighth and Fourteenth Amendments because, at the punishment stage, the trial court admitted evidence of extraneous offenses but did not instruct the jury that it could consider such extraneous offenses only if they were proven by the State beyond a reasonable doubt. We have rejected such arguments before. As long as the punishment charge properly requires the State to prove the special issues, other than the mitigation

issue, beyond a reasonable doubt, there is no unfairness in not having a burden of proof instruction concerning extraneous offenses. *Jackson v. State*, 992 S.W.2d 469, 477 (Tex.Crim.App.1999); *Burks v. State*, 876 S.W.2d 877, 911 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). We overrule points of error 110 and 111.

In point of error 112, appellant, relying upon Justice Blackmun's dissent in *Callins v. Collins*, 510 U.S. 1141, 114 S.Ct. 1127, 1128, 127 L.Ed.2d 435 (1994), argues that capital punishment, "as presently administered in Texas," is violative of the Eighth Amendment's ban on cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process. We have rejected such arguments before. *Anderson v. State*, 932 S.W.2d at 509. We overrule point of error 112.

### Miscellaneous Points of Error

In points of error 15 and 16, appellant argues that the trial court lacked jurisdiction because the record contains no formal order transferring the case from the 241st District Court, in which the indictment against appellant was originally returned, to the 114th District Court, in which his case was tried.

We discern no problem, jurisdictional or otherwise. The record, as supplemented pursuant to Texas Rule of Appellate Procedure 34.5(c)(1), does contain a formal order, signed by the judge of the 241st District Court, transferring appellant's case from the 241st District Court to the 114th District Court. We overrule points of error 15 and 16.

In point of error 61, appellant argues that this Court's practice of dismissing certain points of error as inadequately briefed violates the Fourteenth Amendment's guarantee of due process. See, *e.g.*, *McDuff v. State*, 939 S.W.2d 607, 621 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). Ap-

pellant notes that "[t]his issue is not ripe unless the Court finds that one or more of [his] claims for relief are 'inadequately briefed' and refuses to review [them]." We note, in turn, that we have overruled some of appellant's points of error because they failed to state arguments on which this Court could, even in theory, base relief.

The Due Process Clause of the Fourteenth Amendment prohibits criminal rules or procedures that offend traditional notions of fair play and substantial justice. *Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992); *Webb v. State*, 161 Tex.Crim. 442, 278 S.W.2d 158, 160 (1955). However, requiring appellants, even capital appellants, to abide by our published briefing rules [15] and to make reasonable arguments in their own behalf does not offend traditional notions of fair play and substantial justice. We overrule point of error 61.

Finally, in point of error 65, appellant argues that the trial court erred in denying his motion, filed shortly before trial, seeking an extension of time in which to file additional pre-trial motions "to address issues not [then] identified." Appellant concedes, however, that "there is no harm" because "there is no indication that the defense lawyers sought to [file any more pre-trial motions]." We agree with appellant. The trial court's error, if any, did not affect appellant's substantial rights. Tex.R.App. Proc. 44.2(b). We overrule point of error 65.

Having found no reversible error, we affirm the judgment of the trial court.

KELLER, J., joined the opinion of the Court except its discussion of points of error seven and eight, in which she concurred only as to the result.

---

**15.** See, *e.g.*, Tex.R.App. Proc. 38.1(h).