Opinion issued July 24, 2003







 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00039-CR
____________
 
MUHANNAD ALI RAMADAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 857853
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Muhunnad Ali Ramadan, guilty of attempted murder
with a deadly weapon and assessed punishment at confinement for 20 years and a
$10,000 fine. In two issues, appellant contends that (1) the trial court erred in
denying his motion for mistrial after having admitted prejudicial testimony and (2)
he received ineffective assistance of counsel when his trial counsel failed to preserve
error for appellate review. We affirm.
Facts
          Eddie Jomah, the complainant, testified that he owned a convenience store in
Galveston, where he worked every day. He hired Ali Hussan as a cashier at the store. 
When Hussan subsequently opened his own convenience store, one block away from
the complainant’s store, the complainant fired Hussan. Hussan “reacted bad
[because] he want[ed] to keep working [at my] store and [at] his store, too.” After the
complainant had fired Hussan, Hussan and appellant, Hussan’s nephew, began to
drive past the complainant’s store in Hussan’s sister’s car. They would drive by “two
or three” times a day and would slow down in front of the complainant’s store and
stare at the complainant, trying to intimidate him. The complainant testified that this
intimidating behavior went on “more than two or three weeks, every single day.”
          On the night of May 8, 1997, the complainant saw Hussan and appellant sitting
in the car in front of his store for “more than 10 minutes looking at the store.” The
complainant called his sons to come close up the store because he “felt bad.” After
his sons arrived, the complainant left the store and began to drive his car toward
Houston. As he was crossing the bridge to leave Galveston, the complainant noticed
a car that was closing in fast from behind. He saw that Hussan was the driver of the
car and that appellant was the passenger. The complainant testified that “I stopped
after the bridge of Galveston to the right to see what [sic] they are chasing me” and
that Hussan drove his car “very close to [the complainant’s door].” Appellant then
got out of the car and hit the complainant’s car with a baseball bat and swung at the
driver’s side window. The complainant testified that “I put my hand [up] to defend
my face, [appellant] broke the glass, broke my hand.” After being struck in the head,
the complainant drove away, but his car was not very fast and Hussan and appellant
were able to keep up with him.
          The complainant exited the freeway and drove under a bridge to hide. After
a few minutes, the complainant thought that Hussan and appellant had left, and he
drove back onto the freeway. Hussan and appellant were waiting, however, and
began to follow the complainant again. The complainant began looking for a police
station, but he got lost and drove into a dead end. Hussan and appellant then blocked
the complainant’s car, got out of their car with baseball bats, and hit the
complainant’s car with their bats. The complainant testified that appellant stated, “I’ll
kill you. I’m going to kill you,” while appellant began to swing the bat at the
complainant. Appellant and Hussan continually struck the complainant in the head
with their bats until the complainant lost consciousness. After he woke up, the
complainant was able to drive home, although he could not remember how.
          Zarifa Jomah, the complainant’s wife, testified that, when the complainant
arrived at their home, he had “blood all over his clothes” and “his face was very
swollen . . . on the left side around the eye.” She further testified that the complainant
went into the bathroom, tried to clean himself, and attempted to put on his pajamas. 
She stated that the complainant did not realize how badly he was injured, and she
began to cry and told her son to call 9-1-1.
          Nader Jomah, the complainant’s son, testified that he saw his father “bleeding,
you know, dragging himself” into the house. The son further testified that he was
helping his father into the bathroom when the complainant stated that “Ramadan and
Ali done [sic] that to him.” An ambulance then arrived and took the complainant to
Ben Taub General Hospital.
          Dr. Alex Valadaka, a neurosurgeon at Ben Taub General Hospital, testified that
he performed a craniotomy and removed three blood clots from the complainant’s
brain. Dr. Valadaka further testified that the complainant’s injury was from blunt
trauma consistent with having been struck in the head with a baseball bat. Dr.
Valadak testified that the complainant’s injury was life-threatening and that the
complainant remained hospitalized for 13 days and was “not fully functioning” when
he returned home.
          Houston Police Department Sergeant Melissa Holbrook testified that she was
initially assigned to the complainant’s case and that she attempted to interview the
complainant while he was hospitalized, but that he was unable to speak. Sergeant
Holbrook spoke with the complainant’s wife and his brother, and Ali Hassan and
appellant became suspects. Sergeant Holbrook did not know appellant’s last name
until later in the investigation, and she was unable to locate a picture of appellant for
several years. The case was listed as inactive until Officer Mark Holbrook received
new information and a photograph of appellant in 2000.
          Officer Mark Holbrook testified that he showed a photospread, containing a
photograph of appellant and five other men with similar features, to the complainant
and that the complainant quickly identified appellant as the man who had been the
passenger in Hassan’s car and who had attacked him with a baseball bat. Holbrook
testified that, when the complainant identified appellant, the complainant said, “I’m
positive. That’s the one. That’s the guy.”
Denial of Mistrial
          In his first issue, appellant contends that the trial court erred in denying his
motion for mistrial after having admitted testimony of the complainant regarding
death threats purportedly made by appellant during a telephone call, when the trial
court ultimately determined that the identity of the telephone caller had not been
established.
          During the complainant’s testimony, the State informed the trial court that it
wanted to present evidence of a telephone threat allegedly made by appellant to the
complainant one week before the attack. The trial court asked appellant’s counsel
whether he wanted to discuss the threat outside the presence of the jury, and
appellant’s counsel stated, “No. We will go forward.” After the testimony was
admitted, appellant’s counsel then asked the trial court to excuse the jury. After the
jury was excused, appellant’s counsel objected to the complainant’s testimony as
being hearsay and as being improperly authenticated. The complainant explained that
he later recognized the telephone caller’s voice as appellant’s voice after he had
heard appellant yell, “I’m going to kill you,” during the attack. The trial court
overruled appellant’s objection and called in the jury. When the State resumed direct
examination of the complainant, he then stated a different reason for having
recognized appellant’s voice, testifying that he believed the caller had been appellant
because “he was the only one working with [Hussan].” The trial court excused the
jury and then determined that the complainant “assumed” the telephone caller was
appellant. The trial court then recalled the jury and instructed it to disregard the
testimony, but the court denied appellant’s request for a mistrial.
          Appellant argues that the trial court erred in denying his motion for mistrial for
the reason that “the objected to testimony was prejudicial and damaging” because
evidence of extraneous offenses “is inherently prejudicial, tends to confuse the issues
of a case, and forces the accused to defend himself against charges which he had not
been notified would be brought against him.” Abnor v. State, 871 S.W.2d 726, 737
(Tex. Crim. App. 1994) (quoting Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim.
App. 1988)).
          However, a mistrial is a device used to halt trial proceedings when error is so
prejudicial that expenditure of further time and expense would be wasteful and futile. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Moreover, improper
evidence will seldom call for a mistrial because in most cases, any harm can be cured
by an instruction to disregard. Id. Here, the trial court instructed the jury to disregard
the complainant’s testimony. We presume that the jury followed the trial court’s
instruction and that the instruction was sufficient to cure any harm. Wesbrook v.
State, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000); Gardner v. State, 730 S.W.2d
675, 696-97 (Tex. Crim. App. 1987).
          Thus, we hold that any possible error was cured by the trial court’s instruction
and that the trial court did not err in denying appellant’s motion for mistrial.
          We overrule appellant’s first issue.
Ineffective Assistance of Counsel
          In his second issue, appellant contends that his trial counsel’s failure to object
timely to improper hearsay testimony constituted ineffective assistance of counsel. 
Appellant notes that, although his trial counsel objected to Nader Jomah’s testimony
that the complainant told him that appellant and Hussan were his attackers, the
objection was untimely. Because error was not preserved, appellant argues that he
received ineffective assistance of counsel.
          To show ineffective assistance of counsel, an appellant must demonstrate that
his counsel’s representation fell below an objective standard of reasonableness based
on prevailing professional norms and that, but for counsel’s errors, there is a
reasonable probability that the result of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064-65, 2068
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). A
“reasonable probability” is defined as a probability sufficient to undermine
confidence in the outcome. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). It is appellant’s burden to prove a claim of ineffective assistance of counsel
by a preponderance of the evidence. Id.; McFarland v. State, 845 S.W.2d 824, 843
(Tex. Crim. App. 1992). Appellant must satisfy both prongs of the Strickland test,
or the claim of ineffective assistance will fail. See Strickland, 466 U.S. at 697, 104
S. Ct. 2052; Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).
          In an effort to satisfy the second prong of the Strickland test, appellant argues
that the evidence of the complainant’s identification was weak and that the evidence
in the entire case was “underwhelming.” However, the complainant positively
identified appellant as one of his assailants, both from a photospread and in court.
Even though Nader Jomah’s testimony may have bolstered the complainant’s
identification of appellant, appellant does not demonstrate how, in reasonable
probability, the result of his trial would have been different but for his counsel’s
failure to object timely to the hearsay testimony. Accordingly, we hold that appellant
has not met his burden of proving the second prong of the Strickland test.
          We overrule appellant’s second issue.Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Taft and Jennings.

Do not publish. Tex. R. App. P. 47.2(b).