NUMBER 13-06-099-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


BILLY JOE NOLEN, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 25th District Court 

of Lavaca County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Billy Joe Nolen, of aggravated assault against a
public servant. Following the jury's recommendation, the trial court placed him on five
years' community supervision. By two points of error, he complains the trial court
erred in denying his motion for new trial. We affirm.

I. Facts 


 G.T. Oil Field hired Clyde Kazmir, a construction-firm owner, to prepare a drilling
site on appellant's property. When Kazmir's bulldozer operator finished the job, he left
the dozer and a truck on the property. About two days later, the operator returned for
the equipment but discovered the gate to the property was locked. When Kazmir told
appellant he was coming to get his equipment, appellant told him the job was done
wrong and that the operator had knocked down a tree. Appellant also told him, "'You
come on. I want to met [sic] you. I haven't had this much fun since I quit watching
TV.'" Kazmir perceived this latter statement as a threat and reported the problem to
the Lavaca County Sheriff's Department.

 On October 11, 2004, Deputy Michael Mills was dispatched to the scene. 
Kazmir testified that when he and Mills arrived at the scene, a pickup was sitting in the
road and a Jeep was backed up to the gate. Appellant had a pistol strapped to his side
and was standing by the pickup. Mills parked about 100 feet from appellant, got out
of his vehicle, and told appellant three times to put his gun up. Appellant ignored the
commands, pulled a rifle from the Jeep, and pointed it at Mills in a threatening manner. 
At that point, Kazmir left and called for backup.

 Deputy Mills's testimony indicated that at the time in question, he was a
certified, licensed peace officer, working for the Lavaca County Sheriff's Department. 
He was in full uniform and on patrol in a fully marked patrol unit. He received a call
from the sheriff's department requesting him to contact Kazmir. Kazmir told Mills he
needed to pick up his bulldozer and that he was concerned for his safety. They drove
to appellant's property, arriving about 11:00 a.m. Mills approached appellant and told
him, "Mr. Nolen, sheriff's department, I need to speak to you. . . ." Appellant pulled
up his jacket, revealing a gun and holster. Mills advised him three or four times to put
the weapon up. Appellant refused and went to his truck. Mills testified about what
happened next: "[I] told Kazmir that he [Kazmir] needed to go back down the road
and as I turned back around to face him [appellant] . . . he was drawing down on me
with a rifle. I recognized a 30-30, I believe it was. He was looking down at me
through the barrel, right down the sites eye-to-eye, we were looking at each other." 
Mills testified he was close enough to appellant to see the whole weapon, and he
thought he was going to get shot. Mills backed up and took cover. Eventually
appellant turned himself in. Mills's testimony indicated that when he worked for the
Lavaca County Sheriff's Department, his duties included assisting citizens when they
called for either backup or assistance.

 The defense showed that prior to the time Mills and Kazmir arrived at the scene,
appellant's cousin, William Horton, was there in his pickup, talking to appellant. 
Minutes into their conversation, Horton saw a sheriff's car heading towards them. Its
lights were flashing, and there was another vehicle about 100 yards behind it. Horton
saw a uniformed police officer (Deputy Mills) get out of the sheriff's car and take cover
behind the door. He said that Mills repeatedly ordered appellant to throw his gun on
the ground. Because Horton was watching Mills, he did not see appellant point the
rifle at him. However, Horton heard Mills yelling, "'He's aiming that rifle at me.'" He
opined that Mills was not in any danger during the confrontation.

 Appellant testified that when he and Horton were talking at the scene, he saw
a police car coming towards him. Appellant said that Mills stopped about ten yards
from him. He saw Mills jump out of the car and take cover. He heard Mills's order to
throw down his gun. Appellant walked to his vehicle and took out the rifle in order to
put it on the ground where Mills could see it. He denied pointing a gun at Mills. 
However, he did admit to looking through the rifle's scope and seeing Mills. But he
also said that Mills was not under the cross hairs.

II. Legal Sufficiency 


 By point one, appellant complains the trial court erred as a matter of law in
denying his motion for new trial because the evidence was insufficient to show the
alleged victim was lawfully discharging an official duty. In assessing the legal
sufficiency of the evidence to support a conviction, we consider all of the record
evidence in the light most favorable to the jury's verdict and determine whether, based
on that evidence and reasonable inferences therefrom, a rational jury could have found
the accused guilty of all of the elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Ladd v. State, 3 S.W.3d 556, 557
(Tex. Crim. App. 1999).

 The charge instructed the jury that "A person commits the offense of
Aggravated Assault Against Public Servant, if he commits the offense of Aggravated
Assault as hereinafter defined, and the offense is committed against a person the
actor knows is a public servant while the public servant is lawfully discharging an
official duty." The charge also stated that "'Public Servant' includes a sheriff's deputy
of any county in this state."

 The charge did not define the term "official duty." However, in Hall v. State,
158 S.W.3d 470 (Tex. Crim. App. 2005), the court stated:

 [W]e have repeatedly stated that "as long as the officer was acting
within his capacity as a peace officer, he was acting within the lawful
discharge of his official duties." In particular, we have looked at the
details of the encounter, such as whether the police officer was in
uniform, on duty, and whether he was on regular patrol at the time of the
assault. . . . [T]he "lawful discharge" of official duties in this context
means that the public servant is not criminally or tortiously abusing his
office as a public servant by acts of, for example, "official oppression"
or "violations of the civil rights of a person in custody" or the use of
unlawful, unjustified force. . . .


Id. at 474-75 (footnotes omitted). 

 Here, the evidence showed that at the time in question, Deputy Mills was a
licensed, certified peace officer and that he was in uniform, on duty, and on patrol in
a marked sheriff's vehicle. He arrived at the scene during the daytime, making his
identify as a peace officer obvious to appellant. Further, when he approached
appellant, he announced that he was from the sheriff's department and that he needed
to talk to him. Moreover, Mills's duties as a deputy sheriff included helping citizens
when they needed either backup or assistance. In this case, Mills was there to help
Kazmir retrieve a bulldozer and truck, because Kazmir felt threatened by appellant. 
There is nothing to show that Mills was either criminally or tortiously abusing his office
as a public servant by either engaging in or attempting to engage in official oppression,
violations of the civil rights of a person in custody, or the use of unlawful, unjustified
force. See Hall, 158 S.W.3d at 475.

 Viewing the evidence in the light most favorable to the verdict, we believe a
rational trier of fact could have found beyond a reasonable doubt that Deputy Mills
was acting within his capacity as a peace officer and that he was acting within the
lawful discharge of his official duties. A trial court's ruling denying a defendant's
motion for new trial is reviewed on an abuse-of-discretion standard. Salazar v. State,
38 S.W.3d 141, 148 (Tex. Crim. App. 2001). We, therefore, hold that the trial court
did not abuse its discretion in denying appellant's motion for a new trial based upon
legally insufficient evidence. We overrule point one.

III. Factual Sufficiency


 By point two, appellant complains the trial court erred as a matter of law in
denying his motion for new trial because any evidence that the alleged victim was
lawfully discharging an official duty is so weak that it is clearly wrong and manifestly
unjust. In order to determine if the evidence is factually sufficient, we must review
all of the evidence in a neutral light and determine whether the evidence supporting
guilt is so weak that the verdict is clearly wrong and manifestly unjust or whether the
evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt
burden of proof could not have been met. Zuniga v. State, 144 S.W.3d 477, 484-85
(Tex. Crim. App. 2004). Due deference must be given to the jury's determination,
particularly concerning the weight and credibility of the evidence. Johnson v. State,
23 S.W.3d 1, 9 (Tex. Crim. App. 2000). This court has authority to disagree with the
fact-finder's determination "only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice." Id.

 Appellant argues that Deputy Mills committed attempted official oppression the
moment he demanded appellant return the bulldozer, without first obtaining judicial
authority in the form of a court order. As authority, he cites section 39.03(a)(1) of the
Texas Penal Code, which states: "A public servant acting under color of his office or
employment commits an offense if he: (1) intentionally subjects another to
mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or
lien that he knows is unlawful. . . ." Tex. Pen. Code Ann. § 39.03(a)(1) (Vernon 2003). 
There is no evidence to show that Deputy Mills either committed or attempted to
commit official oppression when he accompanied Kazmir to retrieve the bulldozer and
truck. Accordingly, there is no showing that the evidence supporting the verdict,
particularly that which shows Deputy Mills was acting within the lawful discharge of
his official duties, is so weak that the verdict is clearly wrong and manifestly unjust
or that the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. We find the evidence is factually
sufficient to establish that Deputy Mills was acting within the lawful discharge of his
official duties. We, therefore, hold the trial court did not abuse its discretion in
denying appellant's motion for a new trial based upon factually insufficient evidence. 
We overrule point two.




 The trial court's judgment is affirmed. 

 

 ___________________

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 1st day of February, 2007.