Opinion issued June 12, 2008

















In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00664-CR
____________

DONOVAN ROBINS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1071943



 
MEMORANDUM OPINION
          Appellant, Donovan Robins, appeals from a judgment convicting him of capital
murder for the death of complainant, Jahzara Robins, his fourteen-month-old
daughter. See Tex. Penal Code Ann. § 19.03(a)(8) (Vernon 2003). Appellant
pleaded not guilty to the jury. The jury found appellant guilty and the court assessed
punishment at life imprisonment without parole. See Tex. Penal Code. Ann.
§ 12.31(a) (Vernon Supp. 2007). In two issues, appellant contends that the evidence
is legally and factually insufficient to prove that he intentionally and knowingly
caused the death of complainant. We conclude that the evidence is legally and
factually sufficient to support the conviction. We affirm the judgment of the trial
court.
Background 
          Appellant moved from Jamaica to New York when he was 17, where he lived
until moving to Houston to live with complainant’s mother, Telicha Hills. Appellant
and Hills lived together for approximately seven years, beginning sometime in 2000
and ending three to four months after complainant died. The appellant and Hills were
not ceremonially married but held themselves out to the public as husband and wife,
and Hills considered their union a common-law marriage. Complainant, the daughter
of appellant and Hills, was born on December 6, 2004 in perfect health after a full-term pregnancy without complication.
          Hills bathed complainant on March 1, 2006 and did not notice any bruises on
her. Two days later, at about 6:20 in the morning, complainant’s mother and brother
left the house, where they left complainant, who was still sleeping, solely in
appellant’s care. About three hours later, appellant called Hills at work to tell her that
he spanked complainant because she was trying to go up the stairs. One half hour
after that, Hills called appellant to tell him that she would be home late, and while
they were speaking on the telephone, appellant quickly hung up stating that
complainant had “boo-booed real bad.”
          Appellant called 911 at 3:39 in the afternoon to report that complainant stopped
breathing; an ambulance was then dispatched within two minutes and arrived at the
apartment within five minutes of the dispatch. The paramedics found complainant
lying on the kitchen table, not breathing and cold to the touch. According to one of
the paramedics, a body that is cold to the touch “means that that heart has not been
beating for a number of hours—more than 20 minutes, at least.” The paramedics
noticed what they later discerned to be applesauce coming out of complainant’s
mouth when they tried to perform cardiopulmonary resuscitation (CPR). Appellant
told the paramedics that he was feeding complainant a bottle when she choked and
stopped breathing. Another paramedic overheard the appellant explaining something
about feeding complainant an apple and a bottle.
          The paramedics noticed that complainant had bruises on the arms, legs,
abdomen, and partially on the back. Complainant was taken to the hospital and never
resumed breathing.
          A police officer with the Houston Police Department and a caseworker with
Children’s Protective Services subsequently spoke to appellant about what happened
to cause the death of complainant. Appellant told the officer that he was feeding
complainant a piece of apple and a bottle. Appellant told the caseworker that he was
feeding complainant pureed fruit when she started choking, but also said that
complainant fell down the stairs around 10:30 or 11:00 that morning. 
          Appellant also told other people about how complainant died. On the day
complainant died, appellant told Hills that complainant choked on a bottle. Two days
after complainant’s death, appellant told Hills’s mother that complainant “had choked
on the bottle. Then he came back and told her that she choked on an apple. Then he
come back and told her that she had fell down the stairs.”
          Post-autopsy, the medical examiner testified that complainant died from acute
blunt impact trauma to the torso, causing a tear of the mesentery and internal
bleeding, and blunt force trauma to her extremities and head. The medical examiner
defined “acute” to mean “happening close to or at the time of death.” The medical
examiner further testified that the injuries were not consistent with falling down the
stairs, choking, CPR, or any other type of household accident. The medical examiner
determined the manner of death to be homicide, which means death at the hands of
another. According to the medical examiner, the contusions were consistent with
inflictions that occurred on the same day of complainant’s death during the time
frame of 6:30 in the morning to 3:45 in the afternoon on the day of her death and
were consistent with being struck with or against an object, foot, or hand. The
medical examiner also noted that complainant sustained non-acute blunt impact
injuries to the head, consisting of a healed fracture of the skull and another lesser
injury that was already in the healing process. According to the medical examiner,
complainant had no significant medical disease that contributed in any way to her
death.
          Appellant did not testify at trial. The defense’s sole witness was Hills, who
was questioned about her prior testimony.
Legal Sufficiency of the Evidence
          In his first issue, appellant challenges the legal sufficiency of the evidence to
support the intent element of capital murder. Appellant contends the evidence fails
to support any finding that appellant intentionally or knowingly caused the death of
complainant and that no evidence linked him to her death. Appellant asserts that no
witness testified that he intentionally or knowingly caused the death of complainant. 
Appellant points to the lack of evidence to show he had any history of abuse or
violence toward anyone. Appellant claims the medical examiner could not determine
the exact time the injuries occurred. Furthermore, appellant contends that his
explanation that complainant fell down the stairs shows he did not commit capital
murder.
          In assessing legal sufficiency, we determine whether, based on all of the record
evidence, viewed in the light most favorable to the verdict, a rational jury could have
found the accused guilty of all of the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781,
2788–89 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). 
In conducting our review of the legal sufficiency of the evidence, we do not
reevaluate the weight and credibility of the evidence, but ensure only that the jury
reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993). A person commits capital murder if he intentionally or knowingly causes the
death of an individual under six years of age. Tex. Penal Code Ann. § 19.03(a)(8).Viewing the evidence in the light most favorable to the verdict, the evidence
shows that the jury could have rationally concluded that appellant intentionally or
knowingly caused the death of complainant. According to the medical examiner, the
injuries were consistent with being inflicted during the time frame that appellant was
alone with complainant on the day of her death, and with being inflicted by another
person. The medical examiner also stated the injuries were inconsistent with choking
on food or beverage or falling down the stairs.
          The jury is free to infer intent to kill from the nature of the injury inflicted.
Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994). The medical
examiner testified as to the extensive nature of the bruising on complainant’s body.
The medical examiner documented five bruises on complainant’s lower torso and
abdomen. The medical examiner also documented deep-tissue bruises to the
buttocks. Complainant also showed bruising over the right side of the body as well
as over the right arm, wrist, hand and hip. The medical examiner further documented
a large bruise on the outside of the left arm, with more bruising over the elbow and
extensive bruising along the forearm and wrist. Complainant also showed bruising
on the left shin. Due to the extensive bruising over complainant’s body, the jury
could have rationally inferred appellant had the intent to kill complainant. See id.
          A defendant’s intent to kill may also be inferred from his words, acts, and
conduct. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Appellant
made multiple inconsistent statements in regard to what caused complainant’s death.
Appellant told a paramedic that he was feeding complainant a bottle when she
choked. Another paramedic overheard appellant explaining something about feeding
complainant an apple and a bottle. Appellant also told a police officer that he was
feeding complainant a piece of apple and a bottle. Appellant told a caseworker for
Child Protective Services that he was feeding complainant pureed fruit when she
started choking, but also said that complainant fell down the stairs the morning of her
death. Appellant told an aunt of Hills that complainant had choked on a bottle, then
that she had choked on an apple, and then that she had fallen down the stairs. 
Appellant told Hills that complainant had choked on a bottle, and when she later
asked again what happened, he told her “You wouldn’t believe.” Hills also testified
that she had not seen appellant react in any manner to his daughter’s death up until
the date that she testified. From appellant’s multiple explanations for the injuries to
complainant combined with his unresponsive reaction to the complainant’s death, the
jury also could have rationally inferred that appellant had the intent to kill
complainant. See Patrick, 906 S.W.2d at 487.
          Viewed in a light most favorable to the verdict, the evidence shows that a
rational juror could have found beyond a reasonable doubt that appellant intentionally
or knowingly caused the death of complainant. See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2788–99. We hold that the evidence is legally sufficient to prove capital
murder. We overrule appellant’s first issue.
Factual Sufficiency of the Evidence
          In his second issue, appellant challenges the factual sufficiency to sustain the
conviction. Appellant acknowledges evidence of the requisite element of intent, as
follows:
1. Mr. Robins was babysitting the complainant when he called the
mother and said he spanked the complainant for going up the stairs;
 
2. Mr. Robins later called the mother and said their daughter boo-booed
real bad and rushed off the phone;
 
3. Mr. Robins was the only person home with the complainant when he
called 911 because she was not breathing;
 
4. Mr. Robins first stated that the complainant choked on a bottle and
then that she fell down the stairs and hurt herself; and
 
5. Mr. Robins did not show much emotion after the alleged incident.
 
Appellant contends that the evidence that tends to disprove the existence of the
requisite element of intent includes the following:
1. Mr. Robins called 911 to report that his daughter had stopped
breathing;
 
2. Mr. Robins attempted to follow the 911 operator’s instructions and
perform C.P.R. on the child;
 
3. Mr. Robins had no prior history of abuse, violence or hurting anyone;
 
4. Ms. Hills had never seen Appellant discipline their daughter other
than verbally reprimanding her;
 
5. Mr. Robins cooperated with the police and Child Protective Services;
 
6. Mr. Robins admitted that his daughter fell down the stairs to Child
Protective Services;
 
7. Mr. Robins did not attempt to leave the apartment or hospital;
 
8. Ms. Hills continued to live with Mr. Robins for three months after the
alleged incident;
 
9. No witness provided testimony that linked Appellant to the death of
his daughter; and
 
10. Mr. Robins was not charged with any crime until three months after
the alleged incident.

           When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set aside the verdict only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 10–11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a conviction
is “clearly wrong” or “manifestly unjust” simply because, on the quantum of the
evidence admitted, we would have voted to acquit had we been on the jury. Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict. Id. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). When reviewing the sufficiency of the
evidence, we remain mindful of the jury’s role as the exclusive judge of the
credibility of witnesses and the weight to give their testimony. Jones v. State, 944
S.W.2d 642, 648 (Tex. Crim. App. 1996).
          Proof of a culpable mental state almost invariably depends upon circumstantial
evidence. Montgomery v. State, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006,
pet. ref’d); Morales v. State, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), aff’d,
853 S.W.2d 583 (Tex. Crim. App. 1993). Intent can be inferred from the extent of the
injuries to the victim, the method used to produce the injuries, and the relative size
and strength of the parties. Patrick, 906 S.W.2d at 487. In addition, culpable mental
state can be inferred from the acts, words, and conduct of the accused. Id.
          The physical evidence shows appellant intended to kill complainant. The
medical examiner’s testimony described physical injuries on complainant caused by
great force. The medical examiner testified that complainant’s injuries were
consistent with being inflicted by another person and were inconsistent with choking
or falling down the stairs. The most significant injury, the tear of the mesentery
resulting in massive blood loss, is typically seen in auto accidents. The physical
evidence shows appellant used great force to injure complainant and that appellant
therefore intended to injure her. See id.
          The jury also could have inferred intent from the size disparity between
appellant and complainant, with appellant being approximately 6’3” tall and weighing
one hundred and ninety to two hundred pounds, and complainant weighing a mere
seventeen pounds at fourteen months of age. See Martin v. State, 246 S.W.3d 246,
264 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that evidence was
factually sufficient where defendant mother killed her ten-month old baby, who
weighed approximately seventeen pounds). In regard to appellant’s inconsistent
explanations for complainant’s death, “the jury could have reasonably concluded that
appellant changed his story because he had something to hide.” Montgomery, 198
S.W.3d at 87.
          Although appellant points to evidence that suggests he did not intend to harm
complainant, appellant’s position is undermined by evidence of older unaccounted-for
injuries to complainant and by the physical evidence that showed great force was used
to cause complainant’s death. Moreover, reconciliation of any conflicts in the
evidence falls within the exclusive province of the jury. Heiselbetz v. State, 906
S.W.2d 500, 504 (Tex. Crim. App. 1995).
          The proof of appellant’s guilt in this case is neither so weak that the verdict is
clearly wrong and manifestly unjust, nor is it against the great weight and
preponderance of the evidence. Johnson, 23 S.W.3d at 10–11.
          We hold the evidence is factually sufficient to sustain the conviction. We
overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Elsa Alcala
                                                                        Justice
Panel consists of Justices Nuchia, Alcala and Hanks
Do not publish. See Tex. R. App. P. 47.2.