

NUMBERS 13-07-00456-CR
13-07-00457-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AHMAD RASHEED,                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                   **Appellee.**

**On appeal from the 377th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury convicted Ahmad Rasheed, appellant, of murder (appellate cause number 13-07-00456-CR) and deadly conduct (appellate cause number 13-07-00457-CR), and it assessed punishment at forty-five years' and ten years' imprisonment, respectively, and a $10,000 fine for each conviction. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 22.05(b)(2)

(Vernon 2003). The trial court entered two judgments of conviction and sentenced Rasheed to two concurrent terms of confinement for forty-five and ten years. By two issues,[1] Rasheed challenges the legal and factual sufficiency supporting his convictions. We affirm.

## I. BACKGROUND

On the evening of October 17, 2005, Juvenile Probation Officers Kerry Pozzi and Phillip Jandt went to the Victoria Square Apartments to visit a probationer that Jandt was supervising. When they arrived at the apartment complex, Jandt exited the vehicle, and Pozzi stayed in the driver's seat of the parked car. Eric Cook, a nineteen-year old who Pozzi had previously supervised, approached the car and talked to Pozzi. Suddenly, a car fired several gunshots in Cook's direction. Cook sustained two fatal gunshot wounds. Pozzi was not injured, but her car was hit by several bullets. Rasheed was indicted for murdering Cook and engaging in deadly conduct against Pozzi. Rasheed pleaded not guilty on both counts, and his case was tried before a jury.

The record evidences that Rasheed and Cook had briefly met at least once before the drive-by shooting. At trial, Ahmad Brown, a friend of Cook's, testified that, at 2:00 a.m. on October 7, 2005, he and Cook were at a Whataburger in Victoria, Texas when Rasheed approached him and started a fist fight. Brown further testified that Cook brandished a gun, and Rasheed fled the Whataburger upon seeing the gun. After Rasheed fled, Cook and Brown went their separate ways.

Pozzi testified that on the evening of October 17, 2005, she and Jandt were performing a curfew check on one of Jandt's probationers who lived at the Victoria Square

---

[1] In the interest of judicial economy, we issue a single opinion that disposes of Rasheed's two appeals. *See* TEX. R. APP. P. 47.1

Apartments. Pozzi parked her car by a carport at the apartment complex, and Jandt went into the complex to check on his probationer. Pozzi then called her mother on a cell phone, but the conversation was interrupted by Cook. Pozzi testified that she was startled when Cook approached the car, but then she recognized him as a former probationer. Pozzi asked Cook, "Hey, thug. What's up?" Cook responded, "Hey Mrs. Pozzi. How are you?" Pozzi further testified that she heard someone shout, "Hey fool," and Cook turned around. Pozzi then heard four or five pops, and Cook ran around her car into the carport, ran to the passenger's side of her car, said, "Help me," and fell down. As Cook ran around the car, Pozzi saw a "tannish-gold" colored Cadillac speed away. Pozzi finally testified that the Cadillac had dark tinted windows, the driver's window was rolled down, the driver was black, and the Cadillac had approximately three occupants.

Gregory Foley, a friend of Rasheed's, testified as to his Cadillac. Foley testified that in October 2005, he owned a light-tan Cadillac Seville, and he gave it to Robert Johnson, a cousin, so that Johnson could sell it. Foley further testified that Rasheed was driving the Cadillac because his car had broken down. Robert Johnson, a friend of Rasheed's, testified that Rasheed borrowed the car on October 16, 17, and 18.

Marcus Harper, a friend of Rasheed's, testified about the shooting and the events after the shooting. On October 17, 2005, Rasheed and Harper went in the borrowed Cadillac to the Victoria Square Apartments to pick up Rasheed's nephew. Harper testified that Rasheed's car had broken down, and he borrowed a tan Cadillac that belonged to Gregory Foley. When Rasheed drove into the apartment complex, he recognized Cook, and, according to Harper, Rasheed exclaimed, "There he is, right there[;] there's the fool." Harper further testified that Rasheed drove the Cadillac next to Cook and a parked car, said, "Hey fool," and fired four to five shots at Cook. Rasheed then drove away. The next

3

day, the two drove to Halletsville, in Lavaca County, Texas, and Harper threw the gun off a bridge.

Macklin Johnson, a Lavaca County lawyer and rancher, testified that on October 30, 2005, he was tending to his ranch land when he discovered a pistol laying in a sandbar in the Lavaca River. Johnson picked up the gun, and he turned it over to the Lavaca County Sheriff's Department. Harper identified the gun that Johnson found as the same gun that was used in the drive-by shooting and disposed of the next day.

The Lavaca Sheriff's Department forwarded the gun that Johnson found to the Victoria Police Department. Pat Aitchison, a crime scene officer for the Victoria Police Department, testified that he received a gun that had been found in Lavaca County, and he forwarded it to the Department of Public Safety ("D.P.S") for analysis. Aitchison also sent D.P.S. three projectiles and a cartridge casing that were recovered from the crime scene. Clavin Story Jr., a D.P.S. forensic scientist, testified that he analyzed a firearm, three fired projectiles, and a cartridge casing that were sent by the Victoria Police Department, and he concluded that the projectiles and cartridge casing came from the submitted gun.

In two separate charges, Rasheed was charged with the murder of Cook and engaging in deadly conduct against Pozzi. Additionally, the jury was instructed on the accomplice witness rule. It was asked not to consider Harper's testimony unless it believed that Harper's testimony was corroborated by other evidence tending to connect Rasheed to the offenses. The jury returned a guilty verdict on both counts. At sentencing, the jury assessed punishment at forty-five years' imprisonment for the murder count and ten years' imprisonment for the deadly conduct count. This appeal followed.

## II. DISCUSSION

By two issues, Rasheed contends that the evidence is legally and factually insufficient to support his convictions. We now turn to the standards of review, the elements of murder and deadly conduct, and a review of the evidence.

### A. Standards of Review

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first

5

prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 416 (Tex. Crim. App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id*. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

"Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record." *Id*. The jury may choose to believe some testimony and disbelieve other testimony. *Id*. at 707.

**B.    Elements of Murder and Deadly Conduct**

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual TEX. PENAL CODE ANN. § 19.02(b)(1), (2). A person commits the offense of deadly conduct if he recklessly engaged

6

in conduct that placed another in imminent danger of serious bodily injury. *Id*. § 22.05.

## C.     Review of the Evidence

By his two issues, Rasheed argues that the evidence is insufficient to show that Foley's vehicle was used in the drive-by shooting, that Rasheed was an occupant or driver of the vehicle, and that Rasheed handled the gun used in the shooting. We disagree.

Foley owned a light-tan Cadillac that he gave to Johnson to sell, but Rasheed used the vehicle around the time of the murder. Johnson testified that Rasheed borrowed Foley's Cadillac on October 16, 17, and 18, 2005. The shooting occurred on October 17, 2005. Pozzi testified that she heard three or four pops and that the Cadillac she saw speeding away after the shooting was "tannish-gold." Pozzi further testified that she heard a voice say, "Hey fool," before the shooting. Harper testified that Rasheed exclaimed, "Hey fool," before he started shooting. Harper further testified that he disposed of the gun used by Rasheed in the shooting in Lavaca County the day after the shooting. On October 30, 2005, Johnson found a gun in Lavaca County. Aitchison removed three projectiles and a cartridge casing from the scene and sent them and the gun to D.P.S for analysis. Finally, Story tested the gun and the projectiles, and he concluded that they matched.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rasheed murdered Cook and engaged in deadly conduct against Pozzi. *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817. Viewing the evidence in a neutral light, we further conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust, and that the jury's verdict is not against the great weight and preponderance of the

7

evidence. *Watson*, 204 S.W.3d at 414-15. We conclude that the evidence is legally and factually sufficient to support Rasheed's convictions. We overrule Rasheed's first and second issues.

## III. Conclusion

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish. Tex. R. App. P. 47.2(b).
Memorandum Opinion delivered and filed
this the 30th day of December, 2008.