COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| HERBERTO SPENCER, | § | No. 08-10-00262-CR |
| Appellant, | § | Appeal from the |
| v. | § | 205th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20080D05822) |
|  | § |  |

## **O P I N I O N**

An El Paso County petit jury found Herberto Spencer, guilty of one count of indecency with

a child by contact. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). Spencer's victim was an

eight-year-old girl, V.C. The trial court assessed Spencer's punishment at imprisonment for

seventeen years. Spencer now brings four points of error before this Court. Finding no reversible

error, we overrule Spencer's points of error and affirm the judgment of the trial court.

### POINTS ONE AND THREE

In Points of Error One and Three, Spencer argues that the trial court erred in failing to

instruct the jury to disregard certain testimony of State's witness David Cabral, Jr., V.C.'s older

brother. Spencer argues that the testimony in question was "more prejudicial than probative" and

therefore inadmissible under Texas Rule of Evidence 403.[1] He argues further that the State's calling

of Cabral as a witness amounted to prosecutorial misconduct, because the State knew Cabral "was

---

[1] Texas Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

going to testify to something that would severely prejudice [Spencer's] right to a fair trial."

Cabral testified at the guilt stage that, on the morning of Sunday, June 22, 2008, as he was leaving his family's residence and driving to work, he saw Spencer walking on the street near the residence.[2] Cabral's testimony continued:

Q (by the State): [D]id you pull up next to [Spencer]?

A: Yes, sir. That's what I did.

. . .

Q: All right. And – and what happened next?

A: I just told him if he needed anything. And that's when he told me that –

Q: Now, why did you tell him that?

A: That I – that I had told him to like if he – because I saw him, he was like – and that's when he told me, he goes, no, I was wondering why your sister and your mom and your dad didn't go to church.

. . .

Q: Okay. And then what happened?

A: I – he was like – because I told him, like, well, how come you're not at church. And he's like, oh, no, no, no, like –

. . .

Q: Okay.

A: And from there was he just kept on walking.

Q: All right.

---

[2] The evidence at trial established that the members of Cabral's family, including V.C., became acquainted with Spencer in May of 2008 at their church, which was two blocks from the Cabral residence. The evidence also established that Spencer demonstrated an affinity for V.C.

2

A: And I kind of pursued him, like I told him – and he even answered a question, he goes yeah. And I told him, well, by any chance, you know, are you a sex offender or anything? And –

Q: And what was his reaction?

A: He was just – he's like stunned, like paused.

Defense Counsel: Your Honor, can we approach at this time, please?

The Court: Yes. Approach the bench, please.
          In fact, ladies and gentlemen, I'm going to send you out for a minute. It won't be long.

(Jury out.)

Defense Counsel: Your Honor, at this time we object to this testimony under 402 and 403. It's not probative of any fact in this case. The questioning about my client being a sex offender and all that stuff is purely prejudicial.

The Court: Sure it's prejudicial. But what were you saying first?

Defense Counsel: It is not relevant. And if it is relevant, the prejudicial value far outweighs any probative weight that they say this testimony has.
          We'd ask that this testimony be stricken from the record and the jury be instructed to disregard it. If they don't have anything else to elicit from this witness, we ask that he step down and move along.

.   .   .

The Court: Now – I'll instruct the jury. I mean it's – well, it's – I think I'd have to hold this out. I mean it's almost telling him that he's a sex offender with that question . . . .

.   .   .

The Court: Yeah. But at the same time I'm – I'm going to instruct the jury what?

Defense Counsel: Disregard the testimony, Your Honor. And we'd also move for a mistrial.

The Court: Okay. Mistrial denied.

Defense Counsel: And if they don't have anything else to bring out from this witness, then I ask that he step down.

The Court: Well, I don't want it to be so obvious that this question was key. I tell you what they do. You don't have anything else to bring out, do you?

The State: This is this [sic] it. This is the last thing.

The Court: Okay. Then you pass the witness. You ask him what time of day it was when he saw the guy, and then we release him. I don't want them to think that this was an explosion, this question.

Defense Counsel: Yes, Your Honor.

.   .   .

The Court: And that's – the way to smooth it over is you pass the witness. You ask him what time of day it was, you know, what he was wearing or what – or something like that, not material. And then you pass the witness out. Okay?

Defense Counsel: Yes, Your Honor.

Thereafter, the parties acted in accordance with the trial court's instruction, Cabral's allegedly prejudicial testimony was "smoothed over," and he was excused from the witness stand without further discussion.

Spencer failed to persist in his request for an instruction to disregard; rather, he acquiesced in the trial court's preferred method for "smoothing over" Cabral's testimony. For that reason, Spencer is now estopped from asserting a claim that the trial court erred in failing to instruct the jury to disregard. *See Arroyo v. State*, 117 S.W.3d 795, 798 (Tex.Crim.App. 2003) (a party may be estopped from asserting a claim that is inconsistent with that party's prior conduct). We overrule Points of Error One and Three.

**POINT TWO**

In Point of Error Two, Spencer argues that the trial court erred in denying his motion for

4

mistrial, made shortly after Cabral testified that he asked Spencer whether he was "a sex offender or anything" (see discussion above). Spencer argues that Cabral's testimony warranted a mistrial because it was "clearly prejudicial" and incurable by an instruction to disregard.

A mistrial is the trial court's remedy for improper conduct that is so harmful that the case must be redone. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). Only in extreme circumstances, where the prejudice is incurable, is a mistrial required. *Id*. Prejudice is incurable when it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). A trial court's denial of a motion for mistrial will be upheld on appeal absent an abuse of discretion. *Id*.

We discern no abuse of discretion on the part of the trial court in its denial of Spencer's motion for mistrial. The trial court, at the moment it denied Spencer's motion for mistrial, could have reasonably concluded that a mistrial was not warranted because Cabral's testimony was not so prejudicial as to be incurable, either by an instruction to disregard, which Spencer failed to pursue to an adverse ruling, or by the trial court's preferred method for "smoothing over" the testimony. *See Nobles v. State*, 843 S.W.2d 503, 514 (Tex.Crim.App. 1992) (even references to defendant's prior incarceration can be cured of prejudicial effect). We overrule Point of Error Two.

**POINT FOUR**

In Point of Error Four, Spencer argues that the trial court erroneously charged the jurors in such a way that they were allowed to find him guilty without agreeing unanimously as to what he did to incur criminal liability. Spencer admits that he did not object to the trial court's charge but argues that he deserves a reversal nonetheless because the charge deprived him of his right not to be

5

convicted except upon a unanimous verdict.[3]

Unobjected-to charge error requires reversal only if it caused the defendant "egregious harm" and thereby denied him a fair trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Such egregious harm occurs when, "given the circumstances of the case, there is a sufficient risk that the jury was misled by the error and thus, the defendant was wrongfully convicted." G. Dix & J. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 54:31 at 44 (3rd ed. 2011) (citing cases).

At the time of Spencer's offense in 2008, Texas Penal Code section 21.11(a)(1), the statute under which he was convicted, provided that "[a] person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person engages in sexual contact with the child." Section 21.11(c)(1), in turn, defined "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," "if committed with the intent to arouse or gratify the sexual desire of any person." Under section 21.11(a)(1), "[a] person [could] engage in sexual contact by touching the anus, by touching the breast, or by touching the genitals with the requisite intent. Each one of these acts represent[ed] a different offense." *Pizzo v. State*, 235 S.W.3d 711, 717 (Tex.Crim.App. 2007).

The grand jury's indictment against Spencer charged that, on or about June 1, 2008, he committed the offense of indecency with a child by contact twice: once by touching V.C.'s genitals and once by touching her anus. The indictment labeled the two counts as "paragraphs," but they

---

[3] Before jurors may convict in a felony case, they must agree unanimously on each of the elements of the offense(s). *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006).

were counts nonetheless.  G. Dix & J. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 25:205 (3rd ed. 2011) (citing cases).

The trial court's charge to the jury was not in strict accord with the accusation in the indictment.  Rather, the trial court's charge authorized the jurors to convict Spencer of *one* count of indecency with a child by contact if the jurors found that he, with the requisite intent, touched *either* V.C.'s genitals *or* her anus.  The charge did *not* require juror unanimity with respect to which body part that Spencer touched – a fact that the State emphasized to the jurors during its closing argument.

We must determine whether the trial court's erroneous charge caused Spencer egregious harm.  In performing this task, we must consider the entire jury charge, the state of the evidence including the contested issues and weight of probative evidence, counsel's closing argument, and any other relevant information revealed by the record of the trial as a whole.  *Almanza*, 686 S.W.2d at 171.

*The Entire Jury Charge*.  As we mentioned above, the trial court's charge to the jury failed to require juror unanimity with respect to which of V.C.'s body parts that Spencer touched.  The charge, read as a whole, did not correct this error.

*The State of the Evidence*.  The key evidence against Spencer was V.C.'s testimony.  She testified that, on a Sunday morning sometime after May 2008, she and Spencer walked out of their church alone and with her mother's permission, and walked to a "religious store" next door.[4] V.C.'s testimony continued:

> Q (by the State): Okay.  And how did he – how did you get . . . to the [religious] store?

---

[4]  V.C. did not specify the date of the offense, but other testimony at trial established that the offense must have occurred on June 15, 2008.

7

A: We walked.

Q: Okay. Were you walking with him?

A: Well, he was carrying me.

Q: And how was he carrying you?

A: He put his hand under my bottom, like he put his hand like under my legs, like in the middle of my legs.

. . .

Q: You said that he was carrying you. Right?

A: Yes. Yes.

Q: And that – where did you say his hand was that he was carrying you?

A: It was in between my legs.

. . .

Q: What was his hand touching?

A: He was touching like my bottom and my – and my – and the part that I use to go to the restroom.

Q: You said – okay. You know what number one and number two is. Right?

A: Yes.

Q: Which – what exactly was he touching?

A: He was – he was touching number one, like the front, number one.

Q: And number two, was he touching that?

A: There, like right there. (Indicating.)[5]

_____

[5] The record reflects that V.C. utilized a doll while she testified.

8

Q: And when his hand was touching you, what exactly was his hand doing?

A: He was like moving it in some kind of way like that. (Indicating.)

Q: Okay. And was it – did he grab, not grab? What else did the hand do?

A: He – it was like – sometimes it was like rough, but other times it was like softly.

Q: And while he was grabbing your number one and number two, would he say anything?

A: No. He was like making a kind of noise that – like he was like huffing and going (demonstrating) like that.

Q: And how many times was he doing that?

A: About three or four times.

Q: And from the time – during the whole time, how many times did he touch you that way?

A: I don't remember.

.  .  .

Q: Was it one time or more than one time?

A: More than one time.

.  .  .

Q: Less than five times?

A: Yes.

Q: More than once but less than five?

A: Yes.

*The Closing Argument.* As we mentioned above, the State, during its closing argument, explained to the jurors that they need not agree unanimously on which of V.C.'s body parts Spencer

9

touched. During his closing argument, Spencer argued that V.C. was mistaken and that he did not touch her inappropriately.

On this record, we conclude that the trial court's erroneous jury charge did not cause Spencer egregious harm. V.C. testified, in effect, that Spencer, on a single occasion, touched both her genitals and her anus multiple times. Spencer, in his closing argument, denied that any offense occurred. The jurors chose to believe V.C. Nothing in the record suggests that reasonable jurors could have disagreed on which of V.C.'s body parts that Spencer touched. We overrule Point of Error Four.

## CONCLUSION

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

December 7, 2011

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

10