In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-11-00255-CR
_____

**KEITH RAY MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-06-06335 CR**

### MEMORANDUM OPINION

A jury convicted Keith Ray Miller of driving with a child passenger while intoxicated and sentenced Miller to two years in state jail. In one appellate issue, Miller challenges the trial court's admission of expert testimony into evidence at trial. We affirm the trial court's judgment.

A witness is qualified as an expert by knowledge, skill, experience, training, or education. Tex. R. Evid. 702. The expert must have a sufficient background in a particular field and that background must go to the matter on which the witness is to offer an opinion. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). "The focus is

1

on the fit between the subject matter at issue and the expert's familiarity with it." *Id.* "Because the spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses appropriate qualifications as an expert on a specific topic in a particular case." *Id.*

We review the admission of expert testimony for abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010), *cert. denied,* 131 S.Ct. 3030, 180 L.Ed.2d 846, 79 USLW 3629 (2011). Error may not be predicated upon a ruling which admits evidence unless a party's substantial rights are affected. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). We will not reverse if, after examining the entire record, we have fair assurance that the error did not influence the jury or had but slight effect. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

Miller complains that the trial court allowed the State's expert witness, Dana Paris, to testify to topics that Miller contends were beyond Paris's expertise. Paris, a forensic scientist for the toxicology section of the Texas Department of Public Safety crime lab, testified that she has a chemistry degree, has training in toxicology, and is a member of the Southwestern Association of Toxicologists. Paris tests biological specimen for the presence of intoxicating substances or other drugs. Paris testified that she tested a sample of Miller's blood. According to Paris's toxicology report, Miller's blood contained alprazolam, hydrocodone, carisoprodol, and meprobamate.

2

Paris testified that she has received on-the-job training, reviewed literature, spoken with colleagues, and attended a course on toxicology and the effects of drugs. The defense took Paris on voir dire, during which Paris admitted she has no medical training or medical license, is not a certified toxicologist, and received no academic credentials from her toxicology course. After hearing Paris testify that she has previously offered expert testimony regarding the effects of alprazolam, hydrocodone, carisoprodol, and meprobamate, the trial court overruled the defense's objection to Paris's testimony regarding the affects of these drugs on the human body.

Paris testified that anti-anxiety is the intended effect of alprazolam, a central nervous system depressant that can cause drowsiness, dizziness, and sedation. She testified that hydrocodone is both an analgesic and a central nervous system depressant. Paris testified that the body creates metabolites from things that are consumed and that meprobamate is a metabolite of carisoprodol. Over the defense's objection, Paris testified that, based on her training and experience, she believes this process occurred in Miller's case.

Paris also testified that she has reviewed literature, has previously testified to therapeutic amounts, and that based on her training and experience, she could identify the milligrams per liter for drugs and explain their therapeutic amounts. Over the defense's objection, Paris described "therapeutic level" as the amount prescribed by a physician and the "concentration in the blood resulting from taking that amount . . . a range." Paris

testified that she is familiar with the ranges of the four drugs found in Miller's blood. She identified their therapeutic ranges and testified that the alprazolam in Miller's blood fell below the therapeutic range, the hydrocodone was higher than a therapeutic dose, the carisoprodol was on the high end of the range, and the meprobamate was in the middle of the range.

Paris also testified, over the defense's objection, to the additive effects of drugs. She explained that "additive effect" refers to central nervous system depression drugs being added together, in this case, four such drugs. She testified that alcohol is also a central nervous system depressant that would be included. Over the defense's objection, Paris testified that a person can be within the therapeutic range and still lose normal use of his mental or physical faculties. Paris testified that:

> A learned tolerance is more that you know how to function while you are impaired when it comes to simple tasks, but that doesn't really affect your . . . judgment or your ability to multitask. And then there's a tolerance like a body tolerance where you actually gain more receptors and more liver enzymes and you produce the drug -- like it would take more of the drug to -- to have the same effect or side effect or otherwise.

She testified that driving would be a complex task for someone taking the drugs found in Miller's blood and that someone on all four drugs could possibly lose normal use of their mental and physical faculties.

On appeal, Miller contends that the trial court did not have sufficient information to declare Paris an expert on drug interactions, metabolites, therapeutic amounts, drug tolerance, or the effect of drugs on the body. He complains that the trial court allowed

4

Paris to testify to topics in which she lacks expertise, which created the possibility of influencing the jury with potentially incorrect or incomplete information. According to Miller, Paris lacked the credentials or knowledge necessary to testify to the topics on which she opined at trial.

Assuming, without deciding, that the trial court abused its discretion by allowing Paris's testimony, we cannot say that Miller's substantial rights were affected. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b). The jury heard evidence that, while driving, Miller weaved, struck the guardrail, kept applying the brakes, almost struck another vehicle, and failed to signal when turning. The jury viewed a police video recording that showed Miller crossing over into the other lane and failing to use a signal. The jury also heard evidence that officers had to box in Miller's vehicle to get Miller to stop the vehicle. During the stop, an officer noticed that Miller could not stand on his own, was "wobbly," smelled of alcohol, had small pupils, had slow speech, and had a cold can of beer in his vehicle. Miller told the officer that he had purchased two one-pint cans of beer, had been drinking two hours before the stop, and had taken prescription medication two hours earlier. The jury heard the officer testify that Miller's performance on field sobriety tests, admissions to consuming alcohol and medication, manner of driving, and appearance led him to conclude that Miller was intoxicated.

During closing arguments, the defense reminded the jury that Paris analyzes blood, but is not a medical doctor. The defense argued that the State could have called a

5

doctor to testify to whether the medication and alcohol found in Miller's blood rose to a toxic level. The defense asked the jury whether it would want a doctor or Paris to testify to what constitutes a legal dose. The State explained to the jury how the elements of the offense had been met by the evidence presented and briefly discussed the results of Miller's blood test. In its charge, the trial court advised the jury that it is the exclusive judge of the facts proven, of the credibility of the witnesses, and of the weight to be given the witnesses' testimony. The trial court also advised the jury that it could only find Miller guilty if it so found beyond a reasonable doubt.

Even without Paris's testimony, the record contains sufficient evidence from which the jury could find Miller guilty, beyond a reasonable doubt, of driving with a child passenger while intoxicated. *See Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999) (Given all of the evidence before the jury, it was unlikely that admission of the complained-of evidence had a substantial effect on the jury's verdict.). After examining the record as a whole, we have fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See Taylor*, 268 S.W.3d at 592. We overrule Miller's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____

STEVE McKEITHEN
Chief Justice

Submitted on November 27, 2012
Opinion Delivered December 12, 2012
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.